## SUMNER DARNELL v. L. B. MACK.

FILED JANUARY 9, 1896. NO. 4911.

1. **Fraudulent Conveyances:** POSSESSION OF MORTGAGED CHATTELS: BURDEN OF PROOF. In a contest between a chattel mortgagee and one representing a creditor of the mortgagor, the burden of proof is upon the mortgagee to establish the *bona fides* of the mortgage when he has not taken possession of the mortgaged property.

2. ———: ———: ———. This burden is not satisfied merely by showing that there were notes in existence, such as those described in the mortgage as secured thereby, without proof of the consideration of the notes or *bona fides* of the debt represented thereby.

3. **Attachment:** LEVY: JURISDICTION. Where property has been seized under a writ of attachment regularly issued and levied the court acquires jurisdiction over the property, so far at least as to render the custody of its officers lawful, and jurisdiction to that extent is not lost, so long as the action remains pending, by failure to serve process in the main action upon the defendant. Following *Crowell v. Johnson*, 2 Neb., 146; again overruling *Wescott v. Archer*, 12 Neb., 345.

ERROR from the district court of Butler county. Tried below before POST, J.

*Evans & Hale* and *Steele Brothers,* for plaintiff in error, cited: *Marsh v. Burley*, 13 Neb., 261; *Pyle v. Warren*, 2 Neb., 252; *Severance v. Leavitt*, 16 Neb., 439; *Bullis v. Drake*, 20 Neb., 171; *South Omaha Nat. Bank v. Chase*, 30 Neb., 444; *Norton v. Pilger*, 30 Neb., 860; *Gillilan v. Kendall*, 26 Neb., 82; *Edminster v. Higgins*, 6 Neb., 265; *Rhea v. Reynolds*, 12 Neb., 132.

*I. T. McCaskey* and *George P. Sheesley, contra,* cited: *Wescott v. Archer*, 12 Neb., 349; *Ruser v. Union Distillery Co.*, 24 N. Y. Sup., 101; *Rhode Island Hospital Trust Co. v. Keeney*, 48 N. W. Rep. [N. Dak.], 341.

Irvine, C.

December 17, 1889, Thomas Wolfe commenced an ac-
tion against Joseph Blahak and another, in the county court
of Butler county, to recover the sum of $282.60 on a prom-
issory note.   He caused an attachment to be issued against
Joseph Blahak on the ground of a fraudulent removal
and sale of the latter's property.   The attachment was
levied on certain corn as the property of Blahak..  The
summons in the case was January 5, 1890, returned "Not
found," and down to the trial of the present action no fur-
ther steps had been taken in the attachment case.   Febru-
ary 15, 1890, Mack, the defendant in error, commenced
the present action in replevin against Darnell, the sheriff,
who held the corn under the writ of attachment.   The case
was tried in 1891 to the court without the intervention of
a jury, and there was a finding and judgment for the plaint-
iff, from which the sheriff prosecutes error.

The plaintiff claimed the property by virtue of a chattel
mortgage from Blahak.   The defendant undertook to
justify under the writ of attachment.   The argument of the
plaintiff in error is addressed largely to an attack upon the
admission in evidence of the chattel mortgage relied upon by
Mack.   Under that assignment we can hardly consider the
question presented, for the reason that in trials to the court
without a jury errors in the admission of evidence are not,
as such, open to review; but as Mack's claim was founded
entirely upon the mortgage, the same questions are pre-
sented under the assignment that the finding is not sus-
tained by the evidence.   The evidence discloses that the
corn in question was upon a farm recently in the possession
of Blahak.   About the time the attachment was issued,
Blahak absconded.   Mack testifies that he was proceeding
to take posesion of the corn when the attachment was
levied; but nothing is shown to indicate that this proceed-
ing had gone further than an instruction to Mack's agent to

take possession. There is evidence conclusively showing that Blahak had himself left the farm, probably with the intention of not returning, but had left the corn there and servants of his were in charge. Therefore, Mack was not in possession of the mortgaged property when the writ of attachment was levied, and as against a creditor the burden of proof was upon him to show that his mortgage was taken in good faith. (*Pyle v. Warren*, 2 Neb., 241; *Marsh v. Burley*, 13 Neb., 261; *Paxton v. Smith*, 41 Neb., 56, and many other cases.) This burden he failed to satisfy by any evidence. There is testimony to show that the mortgage was given to secure two promissory notes from Blahak to Mack. But this much appears from the face of the mortgage itself. Mack himself testified by deposition, and it is nowhere shown what was the consideration of the notes, that there was any consideration, or that they represented any indebtedness. Surely the good faith of the mortgage is not established merely by showing without other evidence that notes are in existence similar to those described in the mortgage, without proof of the genuineness of the debt which the notes purport to represent, or other proof of good faith. It is, however, contended that in the absence of such proof the mortgage, which was due when the replevin suit was brought, was sufficient as between the parties thereto to give Mack the right of possession, and that proof of the mortgage made out his case, unless the sheriff established that he represented a creditor under valid process; and further, that there having been no service of process, either actual or constructive, upon the defendant in the attachment case the attachment was void, and the officer therefore showed no right against the plaintiff. We presume that the finding of the district court was based on this theory, and such a finding was warranted by the cases of *Wescott v. Archer*, 12 Neb., 345, and *Grebe v. Jones*, 15 Neb., 312. The course of decisions in this state has been somewhat peculiar, and calls for attention.

*Crowell v. Johnson*, 2 Neb., 146, was an action of eject-
ment, in which the plaintiff claimed by deed from one
Dawley and the defendant by virtue of a sale made under
a judgment in an action wherein the land had been attached
as the property of Dawley.    The court held that jurisdic-
tion had been acquired by the levy of the order of attach-
ment, and that a failure to publish notice, the defendant
being a non-resident, while it rendered the proceeding
voidable, did not render it void.    The title under the judi-
cial sale was, therefore, sustained.    In *Wescott v. Archer*,
*supra*, the facts were the same, and the form of action the
same.    The majority of the court, without referring in any
way to *Crowell v. Johnson*, held directly to the contrary—
that is, that the judgment was void because the published
notice was defective.    The chief defect in the notice was
that it did not describe the property attached.    Judge
Lake dissented.    In *Grebe v. Jones, supra*, the court had
rendered judgment in an action in which land had been at-
tached, the defendants being non-residents, the published
notice not properly describing the lands attached.    The
district court, on motion, set aside the judgment.    From
that order proceedings in error were prosecuted.    The ma-
jority of the court, although that was a direct proceeding to
vacate the judgment and not a collateral attack, held that the
notice was sufficient, and overruled *Wescott v. Archer*, in so
far as it held a specific description necessary, but took oc-
casion to express its continued belief that notice was neces-
sary to the jurisdiction of the court.    Judge Lake, while
concurring in the result, again dissented from the reason-
ing of the court, and lamented "the struggle of the writer
of that opinion to hold fast to a remnant of the pernicious
rule announced in *Wescott v. Archer.*"    A rehearing was
at a subsequent term denied, Judge Lake having then re-
tired, the decision of the court being unanimous; but inas-
much as the same result would follow either from the
views expressed in the majority opinion, or from the doc-

trine of *Crowell v. Johnson,* and the views of Judge Lake, overruling the motion for rehearing was not significant on the present question.

Under this state of decisions the first question which arises is as to whether the necessity of publication, in order to confer jurisdiction over attached property where the defendant has not been personally served, is a question still open for inquiry? We think it is. *Crowell v. Johnson* was decided by a united court evidently after a careful consideration of the authorities. *Wescott v. Archer* was decided chiefly upon a review of the case of *Paine v. Mooreland,* 15 O., 435, the court discussing and disapproving only one of the reasons given by the Ohio court for its judgment, and upon a citation of *Millar v. Babcock,* 29 Mich., 526, *Anderson v. Coburn,* 27 Wis., 558, and *King v. Harrington,* 14 Mich., 532. Of these cases *King v. Harrington* is the only one which lends any support to the conclusion of the court, the other two cases merely construing statutes quite different from ours. The fact that Judge Lake dissented and cited *Crowell v. Johnson,* weakened the authority of *Wescott v. Archer* at the start; and the fact that in *Grebe v. Jones* the court retired from its position in *Wescott v. Archer,* and expressly overruled it in a material point, still further discredited the case. We therefore think that the doctrine of *Wescott v. Archer* has not been definitively established, and that in view of the conflicting decisions of the court, an inquiry into the merits of the question is demanded at this time.

The precise question under consideration in *Crowell v. Johnson* and in *Wescott v. Archer* was not the legality of the original levy of attachment, but the validity of a sale made in pursuance of a judgment following such levy. For reasons hereafter stated we regard the two questions as inseparably connected, and think that we cannot decide the first without a consideration of the second. There has been much discussion of the second question, but we are

satisfied that the doubts arising thereupon have been created more by the theoretical views of text-writers than by the adjudicated cases. Judge Drake expressed himself without qualification in favor of the doctrine that so far as the attached property is concerned, jurisdiction attaches by virtue of the levy of a lawfully issued writ, but that a judgment without service of process upon or notice to the defendant is erroneous, although not void. (Drake, Attachment, secs. 436 *et seq.*) In a later work (Waples, Proceedings in Rem, secs. 593 *et seq.*) the position seems to be taken that by the levy of the writ the court obtains lawful custody of the attached property, but is without jurisdiction to proceed to judgment. In 1 Wade, Attachment, secs. 6, 44, 45, the distinction between jurisdiction so far as acquiring the lawful custody of the *res*, and jurisdiction for the purpose of rendering final judgment disposing of the *res*, is denied. The argument is largely in the form of a criticism of *Cooper v. Reynolds*, 10 Wall. [U. S.], 308. At the outset of that criticism Mr. Wade attributes to Mr. Justice Miller, as a part of the opinion in *Cooper v. Reynolds*, the following language: "When notice to the defendant by publication is required, it is not an element of the jurisdiction of the court, but is necessary to authorize the court to exercise its jurisdiction by giving judgment in the cause." No such language was used by Mr. Justice Miller in *Cooper v. Reynolds*, but such language is found in Drake, Attachment, sec. 437, not as a quotation but as Judge Drake's summary of the result of the cases cited by him, of which *Cooper v. Reynolds* is not one. Again, in a foot-note to section 6 Mr. Wade says: "See Waples on Proceedings in Rem, secs. 594–596, where this distinction is freely criticised. Also dissenting opinion of Field, J., in *Cooper v. Reynolds*." But Judge Field wrote no dissenting opinion in *Cooper v. Reynolds*. He merely expressed his dissent without an opinion. Criticisms by text-writers upon a doctrine established by adjudicated cases

serve little purpose, when, as here, they are so evidently made without even reading the cases criticised. In these days when voluminous text-books appear with such rapidity that care in their preparation can hardly be expected, opinions expressed in such works are hardly worth serious attention, except where, as in the present instance, they have introduced a serious doubt upon a point where the real authorities are in practical accord. In the two works cited, while the authors express opinions opposed to the authority of the court to proceed, they practically admit that the weight of authority is against their opinions, but hold that certain well considered cases support their views. Of the cases cited by them we find none which support the view that a judgment rendered in such proceeding is without jurisdiction so far as it affects the attached property, except *Haywood v. Collins*, 60 Ill., 328, and *King v. Harrington*, 14 Mich., 532. To these may be added *Wescott v. Archer*, *supra*. We will not burden the opinion by reviewing the other cases cited by them to show their inapplicability. Some of them were direct proceedings to reverse such a judgment, where the question was one not of jurisdiction but of error in the proceedings. Others were where such a judgment had been rendered in one state, the attached property exhausted, and action brought in another state on the judgment as if it were one *in personam*. Still others were under statutes which fixed a definite time within which, after the issuance or levy of the attachment, process must be served upon the defendant, with a provision for vacating the attachment if this were not done. A valuable case of this class, although not cited by the text-writers, is *Rhode Island Hospital Trust Co. v. Keeney*, 1 N. Dak., 411. On the other hand, we have in the first place *Cooper v. Reynolds*, *supra*, in which the supreme court of the United States, in an opinion by Mr. Justice Miller, clearly elucidated the peculiar character of actions accompanied by attachments, saying : " If the

defendant appears, the cause becomes mainly a suit *in personam*, with the added incident, that the property attached remains liable, under the control of the court, to answer to any demand which may be established against the defendant by the final judgment of the court. But if there is no appearance of the defendant, and no service of process on him, the case becomes, in its essential nature, a proceeding *in rem*, the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff." The court then proceeds to hold that jurisdiction depends upon the lawful seizure of the property and that subsequent defects may render the judgment erroneous but not void. To the same effect is *Paine v. Mooreland*, 15 O., 435; *In re Clark*, 3 Denio [N. Y.], 167; *Beech v. Abbott*, 6 Vt., 586; *Williams v. Stewart*, 3 Wis., 678; *Feild v. Dortch*, 34 Ark., 399; *Hardin v. Lee*, 51 Mo., 241. It is true, as stated by Mr. Wade in his criticism of *Cooper v. Reynolds*, that that case was based upon an attachment under the statutes of Tennessee, and that in a later case the supreme court of Tennessee expressed its opinion to the effect that the supreme court of the United States had wrongly construed its statutes ( *Walker v. Cottrell*, 6 Bax. [Tenn.], 257); but the criticism of the Tennessee court is chiefly directed against another point of the decision in *Cooper v. Reynolds*, and, in any event, the question before us is not whether the supreme court of the United States construed the Tennessee statutes properly in view of the decisions of the Tennessee courts, but whether its construction was a proper one to be given in the first instance to such a statute.

Attachment is, it is true, in this state, a remedy merely ancillary to the personal action, where the defendant is within the jurisdiction of the court and lawfully summoned. At the same time, even in such cases, there is a distinction between personal jurisdiction so as to permit an adjudication of the principal action, and jurisdiction of

the attached property for the purpose of placing it in the lawful custody of the court pending the main action. For the purpose of the attachment an action is commenced when a petition is filed and a summons issued with the *bona fide* intention that it shall be served (*Coffman v. Brandhoeffer*, 33 Neb., 279), although jurisdiction of the person of the defendant had not been then obtained.    In the case of a defendant beyond the jurisdiction of the court, the action is analogous to a proceeding *in rem.*   Substituted service cannot confer personal jurisdiction, and although the requisites for such service be strictly pursued, jurisdiction attaches no further than to permit the court to subject the attached property to the satisfaction of any claim found due.   If a judgment rendered in such a case, without substituted service upon the defendant, is erroneous merely, as we now hold, and not void, then it follows that the property is throughout in the lawful custody of the court, and that the sheriff's possession under the levy of the attachment remains lawful so long as the proceedings are pending.   If, on the contrary, we should follow the doctrine of *Wescott v. Archer*, one of two courses must be taken. We must hold either that because of the failure of the plaintiff to take proper steps to obtain substituted service, all the proceedings became void, and that the sheriff was, as was charged of the Six Carpenters, a trespasser *ab initio*, or else that jurisdiction attached on the levy of the writ and his custody was then lawful, and that it was lost at some point pending the proceedings.   The first course would be as unreasonable as it would be unjust and impracticable. The sheriff, when he receives a valid writ of attachment, is bound to levy it.   We cannot permit him to inquire then for his own protection whether the plaintiff will properly proceed with the subsequent stages of the case.   We cannot subject him to liability for performing his clear duty, because the plaintiff, entirely independent of his control, neglects such subsequent steps.   Nor do we think that the

second course is open.  If the writ levièd before process served is valid, and if a judgment rendered in pursuance of such levy without process is absolutely void, there must be some point between levy and judgment at which jurisdiction is lost, and where it becomes the duty of the sheriff without an order of the court to surrender the attached property. Our statutes provide for no such procedure, and we know no possible way in which the court can determine the point down to which jurisdiction over the attached property extends and after which it is lost, unless we say that jurisdiction attaches for a reasonable time to permit the plaintiff to publish notice.  How is such reasonable time to be determined? An attachment is allowed (Code, sec. 198), not only. when the defendant is a non-resident of the state, or has absconded or left the county to avoid service of summons, but also where he conceals himself so that a summons cannot be served upon him, and in such cases (Code, sec. 77), service may be had by publication.  There may be many actions aided by attachment where the plaintiff is not only justified, but required, if he have a due regard for his oath, to make investigations after the commencement of the action to ascertain the whereabouts of the defendant, and in such cases the law never contemplated 'that the continuance of the court's jurisdiction should depend upon the hour or the day when the plaintiff elected between actual and constructive service and proceeded to have process executed. There is in such case a plain remedy always open where property is unreasonably detained in custody without taking steps to authorize a final adjudication.  The court in such case may, on the motion of an interested party, or on its own motion, dismiss the case for want of prosecution, and with the dismissal of the case there is no doubt that the attachment would fall with it, and further jurisdiction over the attached property cease.  In the case before us no defect is pointed out in the institution of the suit, or the issuance or levy of the writ of attachment.  While it had

not proceeded to judgment, there was uncontradicted proof of an indebtedness to the attachment plaintiff on the cause of action alleged. We hold, therefore, that the sheriff was lawfully entitled to possession as against the plaintiff, unless the plaintiff established the *bona fides* of his mortgage.

REVERSED AND REMANDED.

POST, C. J., not sitting.