ELINOR NIPP, ADMINISTRATRIX, APPELLANT, V. PURITAN MANUFACTURING & SUPPLY COMPANY ET AL., APPELLEES.

FILED MARCH 1, 1935. No. 29165.

*Hugh A. Myers* and *W. A. Ehlers*, for appellant.

*Waldron, Newkirk & Mathews* and *E. B. Zabriskie*, contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

CARTER, J.

This is an action in the nature of a creditors' bill brought by Elinor Nipp, as special administratrix of the estate of Gilbert E. Nipp, deceased, against the Puritan Manufacturing Company, a corporation, Walter J. Charnley, A. J. Schmitz and L. V. Stout, impleaded with the Puritan Manufacturing & Supply Company, a corporation, appellees herein. From an adverse decree in the district court, the plaintiff below brings the case to this court for review.

It appears from the evidence that on and for a number of years prior to January 15, 1927, Gilbert E. Nipp had been president and general manager of the Puritan Manufacturing & Supply Company. At the beginning of the year 1927 the debts of the company amounted to $14,997.98. It also appears that at this time the company, under Nipp's management, had suffered losses on its contracts in a sum aggregating $15,781.13. On January 15, 1927, Nipp sold his stock in the company to the company for the sum of $8,876.66, payable $876.66 in cash or its equivalent, and the balance in thirty monthly instalments represented by the company's promissory notes. Nipp left the company immediately and was suc-

ceeded as president by Walter J. Charnley, one of the appellees herein, who, together with the other appellees, Stout and Schmitz, was a stockholder in the company until it ceased to do business.

The evidence further shows that in January, 1927, the company was being pressed by its creditors for payment of their claims and by the last of August of that year the company was unable to meet its payroll. It also appears that C. L. Waldron assisted in financing the company for a time, after which he was engaged as an attorney to straighten out the affairs of the corporation.

On March 21, 1927, the company filed a suit against Gilbert E. Nipp to enjoin him from negotiating the notes he obtained in the sale of his stock to the company, on the ground that he knew that the stock was worthless and that the stock transaction rendered the company insolvent. On September 19, 1927, the Concrete Engineering Company as a creditor intervened and attacked the stock transaction as a fraud on general creditors. On December 17, 1927, Floyd Woosley intervened in said suit, alleging that he had purchased the claims of all creditors, obtained a judgment thereon in the sum of $14,247.48, and made substantially the same attack upon the stock transaction and the notes held by Nipp arising therefrom as was made in the petition of intervention of the Concrete Engineering Company. This action was never prosecuted to final decree.

On November 25, 1927, Nipp commenced an action against the Puritan Manufacturing & Supply Company on the stock notes involved herein and on October 15, 1931, obtained a judgment for $2,055.71 on the ones that were due. During the fall of 1927, Walter J. Charnley, acting in the name of Floyd Woosley, purchased the claims of creditors against the company for thirty cents on the dollar, brought suit on them in Woosley's name on December 15, 1927, secured a voluntary appearance and confession of judgment from the company, obtained the judgment on December 16, 1927, for $14,247.48, and

on the next day intervened in the suit of Puritan Manufacturing & Supply Company v. Nipp, heretofore mentioned. An execution was promptly issued on Woosley's judgment against all the property of the Puritan Manufacturing & Supply Company and the same was sold to Woosley on January 5, 1928. Appellees contend that they operated the business as a partnership from September 1, 1927, to August 29, 1929, at which time the new corporation, Puritan Manufacturing Company, was organized. On February 15, 1933, this suit was commenced, alleging that the sale of the property to Woosley on execution sale January 5, 1928, was a fraud on the appellant as a general creditor, that the Puritan Manufacturing Company was a continuation of the Puritan Manufacturing & Supply Company and that its assets should be subjected to the judgment obtained by Nipp in his lifetime against the Puritan Manufacturing & Supply Company.

The record shows that at the time Gilbert E. Nipp sold out his interest in the Puritan Manufacturing & Supply Company to the company, Walter J. Charnley had $6,000 invested in the concern. Charnley was engaged as an engineer on construction work and testifies that he knew nothing of the financial condition of the company. After the deal for Nipp's stock was closed, he discovered that the corporation was insolvent. In order to save his investment he put additional funds into the corporation and obtained financial aid from C. L. Waldron. The testimony is very conclusive that Charnley used the name of Floyd Woosley and that Woosley at all times was acting for Charnley and had no interest in the business at any time. The evidence further discloses that, at the time Woosley was attempting to buy the outstanding notes and accounts held by the creditors of the Puritan Manufacturing & Supply Company for Charnley, Nipp knew of the transaction, as he was present at one of the creditors' meetings and participated therein. The cross-petition of Floyd Woosley filed December 17, 1927, in the

case of Puritan Manufacturing & Supply Company v. Nipp contained allegations that the assets of the corporation "should first be exhausted in payment of this intervener's judgment, and in payment of the claims of general and merchandise creditors." That this was notice to Nipp that the intent of Charnley was to pay all creditors in full before Nipp received anything on his judgment requires no argument. That the company had the right to purchase its own stock is not seriously disputed. The weight of authority seems to be that, if it does not appear to be in bad faith and injurious to the rights of its creditors or stockholders, a corporation, when not prevented by its articles or by statute, may buy and sell its own stock, and hold, issue, or retire the same. *Fremont Carriage Mfg. Co. v. Thomsen*, 65 Neb. 370; *Singhaus v. Piper*, 103 Neb. 493. That the sale of the stock to the corporation in the case at bar was injurious to the rights of creditors is amply shown by the evidence. In such cases, the weight of authority seems to be that, while a corporation may contract to purchase its own stock, it may not later, upon insolvency, pay for it until after the existing creditors have been paid. In the case of *In re Fechheimer Fishel Co.*, 212 Fed. 357, it was held: "If at the time the stockholder receives payment for his stock the payment prejudices the creditors, payment cannot be enforced. If a stockholder sells his stock to a corporation which issued it, he sells at his peril and assumes the risk of the consummation of the transaction without encroachment upon the funds which belong to the corporation in trust for the payment of its creditors."

It was also held in the case of *Crandall v. Lincoln*, 52 Conn. 73, at page 104, 52 Am. Rep. 560: "If the view we have taken of the character and nature of this stock is sound, and we have no doubt that it is, the conclusion inevitably follows that under no circumstances can a stockholder sell his stock to the company and take therefor his portion of the capital stock to the prejudice of creditors. The illegality of the transaction does not

at all depend upon the actual knowledge or *mala fides* of the seller; if he in fact sells to the company and receives in return a part of the capital, the policy of the law requires him to know it, and conclusively charges him with knowledge. Thus selling, he sells at his peril. In no other way can the rights of creditors be protected. The seller can protect himself by selling to other parties, or he may hold his stock, taking, as he is bound to, the risk of his investment. The creditor is not bound to assume any part of the stockholder's risk, and he has no way of protecting himself. The law is his only protection."

The above cases are not based upon local statutes but upon general principles. It is clear, therefore, in the case at bar, that Gilbert E. Nipp and his personal representative were at all times mentioned herein subsequent in their rights to those of general creditors. Charnley at all times stood in the position of the general creditors, having purchased their claims. The evidence shows that he bid in the assets of the company for more than their market value. It is apparent from the record that he gained no advantage because of the fact that he was president of the corporation. It has been held by this court: "An officer of a corporation for pecuniary profit, who in good faith purchases at judicial sale the property of the corporation, will be protected in such purchase, provided he shows affirmatively that he has, as indicated, paid the full value of the property of which he so became the purchaser." *Horbach v. Marsh,* 37 Neb. 22. The evidence is very convincing that the appellees should come within this rule. In addition to the good faith of the appellees shown by the record, the evidence discloses that Gilbert E. Nipp had full knowledge of the transaction on December 17, 1927, when Woosley filed his petition in intervention in the case of Puritan Manufacturing & Supply Company v. Nipp. This action was commenced February 15, 1933, more than four years after Nipp had knowledge of the transaction, and also

more than four years after the sale of the corporation assets to Woosley, and it is clearly barred by the statute of limitations of this state. Comp. St. 1929, sec. 20-207. "The lapse of four years after the discovery of the alleged frauds, or of such facts as were sufficient to demand such investigation by plaintiff as would have disclosed the alleged frauds, bars an action brought for relief upon the ground of such frauds." *Horbach v. Marsh,* 37 Neb. 22. See, also, *Marshall v. Rowe,* 126 Neb. 817.

Appellant complains of the insufficiency of the published notice of the execution sale at which Charnley through Woosley purchased the property of the Puritan Manufacturing & Supply Company. The record shows that publication was made for seven days before the sale instead of ten as required by section 20-1525, Comp. St. 1929. This court in the case of *Darnell v. Mack,* 46 Neb. 740, after considering many cases on this subject, cites with approval the following: "That jurisdiction depends upon the lawful seizure of the property, and that subsequent defects may render the judgment erroneous, but not void." While it is true that the exact question discussed was not involved in *Darnell v. Mack,* yet the reasoning therein contained is also cited with approval in the case of *Brown v. Bose,* 55 Neb. 200, which holds: "That jurisdiction to order a sale depends upon the lawful seizure of the property, and that subsequent defects may render the judgment erroneous, but not void. * * * We could add nothing of value by going over the propositions considered in *Darnell v. Mack, supra,* and hence refrain from any attempts in that direction. The reasoning meets our approval, as applied to the facts of this case, and it is necessary merely to refer to that reasoning for a discussion of the pivotal question with which we are dealing."

We, therefore, hold that, where personal property has been lawfully seized by execution and a sale thereof had, a purchaser acquires a title which cannot be collaterally questioned in another action, even though the publication

of the notice of sale might have been held defective if it had been properly assailed. Appellant cannot, therefore, question the title obtained by Woolsey at the execution sale in the case at bar.

Upon a consideration of all the evidence, we arrive at the same conclusion as did the trial court that the transactions and proceedings attacked by appellant were not fraudulent, that the assets of the Puritan Manufacturing & Supply Company were sold on the execution sale at their full value and applied to the payment of the indebtedness owed by the Puritan Manufacturing & Supply Company to its existing general creditors, and that appellant has no claim in equity against any of the appellees herein.

AFFIRMED.