JOHN B. ADAMS AND LINDA B. ADAMS, ET AL.,[1] PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1423–76, 1464–76, 1465–76.     Filed March 30, 1978.

*Kent O. Littlejohn* and *Michael L. Sullivan,* for the petitioners.
*Wayne B. Henry,* for the respondent.

QUEALY, *Judge:* Respondent determined deficiencies in income taxes of petitioners as follows:

| Petitioners | Docket No. | Taxable year | Deficiency |
|---|---|---|---|
| John B. Adams and Linda B. Adams | 1423–76 | 1972 | $787.55 |
| Melvin H. Adams and Lucille B. Adams | 1464–76 | 1972 | 6,480.04 |
| Melvin H. Adams, Jr., and Huberta A. Adams | 1465–76 | 1972 | 108,702.06 |

The above-entitled proceedings were consolidated for purposes of trial and opinion. The sole issue for decision is whether the redemption by First Security Bank of Sutherland, Nebr., of 217 shares of its stock is taxable as a dividend as defined in section 316(a).[2]

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

At all times material herein, John B. Adams and Linda B. Adams, petitioners herein, resided in Imperial, Nebr.

At all times material herein, Melvin H. Adams and Lucille B. Adams, petitioners herein, resided in Brule, Nebr.

---

[1] Cases of the following petitioners are consolidated herewith: Melvin H. Adams and Lucille B. Adams, docket No. 1464–76; Melvin H. Adams, Jr., and Huberta A. Adams, docket No. 1465–76.
[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

At all times material herein, Melvin H. Adams, Jr., and Huberta A. Adams, petitioners herein, resided in Ogallala, Nebr.

All of the foregoing petitioners filed their Federal income tax returns for the taxable year 1972 with the Internal Revenue Service Center at 1160 West 1200 South Street, Ogden, Utah.

At all times material herein, First Security Bank of Sutherland, Nebr. (hereinafter referred to as First Security), was a banking corporation organized under the laws of the State of Nebraska, having outstanding 500 shares of capital stock.

On October 16, 1972, the stock of First Security was owned as follows:

| | | |
|---|---|---|
| Estate of Frank E. Whitlake | | |
| Certificate No. 4 .......................... 130 | | |
| Certificate No. 6 .......................... 127.5 | 257.5 | |
| Estate of Caroline C. Whitlake | | |
| Certificate No. 3 ...........................40 | | |
| Certificate No. 7 .......................... 37.5 | 77.5 | |
| Arch W. Leu | | |
| Certificate No. 1 ...........................40 | | |
| Certificate No. 9 .......................... 37.5 | 77.5 | |
| Anne O. Watson | | |
| Certificate No. 5 ...........................40 | | |
| Certificate No. 8 .......................... 37.5 | 77.5 | |
| John F. Fleak | | |
| Certificate No. 10 ..........................10 | | |
| Total .................................................. 500 | | |

At that time, the directors of First Security were Arch W. Leu, Anne O. Watson, and John F. Fleak. The latter two were also officers of the bank.

In 1972, Melvin H. Adams, Jr. (hereinafter referred to as petitioner), was president of Keith County Bank & Trust Co., Ogallala, Nebr. At that time, he was cognizant of the fact that the stock of First Security held by the Whitlake estates would be offered for sale. Petitioner thereupon made arrangements to purchase such stock pursuant to a plan whereby the purchase would be financed, in part, by the redemption of a part of the stock by First Security. The Nebraska banking authorities advised the petitioner that such plan could be effectuated provided that the number of shares redeemed would immediate-

ly be reissued as a stock dividend, thereby maintaining intact the capital and paid-in surplus of First Security.

Prior to October 17, 1972, petitioner opened a checking account in the name of "Mel Adams, Agent," at the Keith County Bank & Trust Co., of which he was president, to be used in the purchase of the stock of First Security. There were no funds in said account prior to October 24, 1972.

On October 17, 1972, a meeting was held at the offices of Charles W. Baskins, attorney for the Whitlake estates, to obtain bids for the sale of the 335 shares of First Security stock held by such estates. In addition to Mr. Baskins, there were present at that meeting Arch W. Leu, Anne O. Watson, John F. Fleak, and their attorney; and Melvin H. Adams, Huberta A. Adams, Melvin H. Adams, Jr., Lucille B. Adams, and petitioner's attorney and accountants.

Mr. Leu and the petitioner entered bids for the purchase of the First Security stock belonging to the Whitlake estates. Petitioner was the successful bidder at a price of $1,350 per share. In that event, it had been agreed that petitioner would purchase the remaining First Security stock from the minority shareholders at a price of $820 per share.

All of the selling stockholders, as well as Mr. Baskins, had been advised of petitioner's plan to obtain part of the funds for the purchase through a redemption of First Security stock. However, they were not parties to that plan. Mr. Baskins also knew that petitioner was bidding as "Mel Adams, Agent." However, Mr. Baskins assumed that petitioner was bidding on behalf of himself and the other members of his family.

At the conclusion of the meeting, petitioner delivered to Mr. Baskins a check dated October 17, 1972, in the amount of $452,250, payable to George T. Cummings, administrator of the Whitlake estates, drawn on the account of "Mel Adams, Agent," at the Keith County Bank & Trust Co. Mr. Baskins gave petitioner a receipt for the check acknowledging payment in full for the 335 shares of First Security stock owned by the estates. However, he advised petitioner that the sale was subject to approval by the County Court of Lincoln County, Nebr.

On October 18, 1972, petitioner as "Mel Adams, Agent," entered into an agreement with George T. Cummings, administrator of the Whitlake estates, for the purchase of said 335 shares of First Security stock at $1,350 per share, or a total of

$452,250, subject to approval of the sale by the County Court of Lincoln County. The agreement provided:

### ASSIGNMENT

Buyer shall have the right to assign this Contract, either in whole or in part, provided he shall remain primarily and solely responsible for its performance.

On October 18, 1972, petitioner delivered additional checks, drawn on the account of "Mel Adams, Agent," at the Keith County Bank & Trust Co. to the minority shareholders for the purchase of their stock at $820 per share, as follows:

| Stockholder | Number of shares | Amount |
|---|---|---|
| Arch W. Leu | 77½ | $63,550 |
| Anne O. Watson | 77½ | 63,550 |
| John F. Fleak | 10 | 8,200 |
| Total | | 135,300 |

At the time these checks were delivered, there were no funds in the account of "Mel Adams, Agent," with the Keith County Bank & Trust Co. to make payment on account of any of the checks. It was understood by the payees that such funds would be obtained by petitioner in part through borrowing from the Omaha National Bank and in part through the redemption of some of the shares of its stock by First Security.

Arch W. Leu, Anne O. Watson, and John F. Fleak, respectively, delivered to petitioner the certificates representing the First Security stock owned by them, duly endorsed to "First Security Bank."

On October 24, 1972, the County Court of Lincoln, Nebr., approved the sale of the First Security stock to the petitioners by the administrator of the Whitlake estates. Whereupon petitioner obtained a loan of $135,300 from the Omaha National Bank, which was deposited in the account of "Mel Adams, Agent," with the Keith County Bank & Trust Co. Thereupon, the checks of Arch W. Leu, Anne O. Watson, and John F. Fleak were presented for payment and cleared the Keith County Bank & Trust Co. The balance remaining in the account on October 26, 1972, following the payment of said checks was "zero."

On October 24, 1972, the certificates representing the First Security stock held by the Whitlake estates were endorsed and delivered to petitioner, as follows:

| Estate | Certificate No.— | Number of shares | Endorsement |
|---|---|---|---|
| F. H. Whitlake | 4 | 130 | "Mel Adams" |
| F. H. Whitlake | 6 | 127½ | "Mel Adams" |
| Caroline C. Whitlake | 3 | 40 | "First Security Bank" |
| Caroline C. Whitlake | 7 | 37½ | "12 shares—First Security Bank, 25.5 shares—Mel Adams" |

On October 25, 1972, petitioner delivered the certificates representing 165 shares of First Security stock acquired from Arch W. Leu, Anne O. Watson, and John F. Fleak to First Security for cancellation.

On October 25, 1972, there was issued to "Mel Adams" Certificate No. 11 for 283 shares of stock of First Security, designated as being in transfer of the following:

| Number of original certificate | Number of original shares | Number of shares transferred |
|---|---|---|
| 4 | 130 | 130 |
| 6 | 127.5 | 127.5 |
| 7 | 37.5 | 25.5 |

Petitioner thereupon endorsed said certificates for transfer, as follows:

| Transferee | Number of shares |
|---|---|
| John B. Adams | 10 |
| Melvin H. Adams | 20 |
| Huberta A. Adams | 10 |
| Lucille B. Adams | 10 |
| Mel Adams | 233 |

Petitioner received a total of $30,456 from John B. Adams, Melvin H. Adams, Huberta A. Adams, and Lucille B. Adams in payment for the 50 shares of First Security stock.

On October 25, 1972, First Security issued to Mel Adams Stock Certificate No. 12 for a total of 217 shares, as a stock dividend to replace the 52 shares, received from the Estate of Caroline C. Whitlake and canceled, and the 165 shares, received from the minority stockholders and canceled.

On October 30, 1972, First Security transferred the sum of $206,850 to Keith County Bank & Trust Co. for the account of

"Mel Adams, Agent," in redemption of 217 shares of its stock. On that date, First Security had accumulated earnings and profits amounting to $281,500.

On October 30, 1972, petitioner deposited in the account of "Mel Adams, Agent," with the Keith County Bank & Trust Co. the sum of $587,550, of which the sum of $380,700 represented the proceeds of a loan obtained by the petitioner from the Omaha National Bank, and the sum of $206,850 represented the proceeds obtained by the petitioner from a redemption by First Security Bank of 217 shares of its stock. On the same date, the check dated October 17, 1972, payable to George T. Cummings, administrator, in the sum of $452,250 was presented for payment and cleared the bank. Simultaneously, petitioner withdrew the remainder of $135,300 in the account in order to pay his first loan in that amount owing to the Omaha National Bank.

In his notice of deficiency, the respondent determined that the redemption of stock by First Security of 217 shares of its stock discharged an obligation for which petitioners were personally liable and that such payment constituted a taxable dividend to the petitioners.

## OPINION

Petitioner set about to acquire, on behalf of himself and certain members of the Adams family, the stock of First Security Bank of Sutherland, Nebr. First Security had outstanding 500 shares of stock, of which 335 shares were held in the Whitlake estates and 165 shares were held by the directors and officers of the bank. In the course of negotiations, petitioner was the successful bidder for the estates' stock at a price of $1,350 per share, or $452,250, and by agreement with the minority shareholders had the right to purchase their stock for $820 per share, or a total of $135,300. In such negotiations, petitioner purported to act as "Mel Adams, Agent."

From the outset, petitioner had disclosed to the sellers that he proposed to obtain a part of the funds for the purchase of the First Security stock by having the bank redeem an undetermined number of shares of that stock. He had obtained approval of the Nebraska banking authorities for the redemption on the condition that immediately thereafter the equivalent number of shares be issued as a stock dividend, thereby maintaining intact the capital and paid-in surplus of the bank.

In order to consummate the transaction, petitioner opened an account in the name of "Mel Adams, Agent," with a bank of which he was then president. Pending approval of the sale by the County Court of Lincoln County, he proceeded to issue checks in payment both for the stock held by the estates and the stock held by the minority shareholders. At that time, there were no funds in the account. Once court approval was obtained, petitioner completed the transaction by having First Security redeem 217 shares of its stock for a total of $206,850 and by obtaining the balance of the purchase price through a series of loans from the Omaha National Bank. Simultaneously, First Security reissued 217 shares of its stock to the petitioner as a stock dividend. The respondent determined that the redemption of the stock discharged an obligation for which the petitioners were personally liable, and is taxable as a dividend to the extent of the earnings and profits of First Security. Such earnings and profits exceeded the redemption price.

Petitioner contends that in the negotiations and the agreements resulting therefrom, which were conducted by "Mel Adams, Agent," petitioner acted on behalf of First Security Bank. In other words, petitioner contends that to the extent of the 217 shares of stock which were redeemed, First Security was a principal in the negotiations and the petitioner its agent. Petitioner relies on cases such as *Fox v. Harrison*, 145 F.2d 521 (7th Cir. 1944); *Ciaio v. Commissioner*, 47 T.C. 447 (1967); *Bennett v. Commissioner*, 58 T.C 381 (1972); *Decker v. Commissioner*, 32 T.C. 326 (1959); *Erickson v. United States*, 189 F. Supp. 521 (S.D. Ill. 1960). However, such cases are clearly distinguishable on the facts.

Petitioner argues that a corporation may appoint an agent, either in writing or orally, and that such agency may be implied from the fact that the directors of First Security were present at the meeting in Mr. Baskins' office. It is clear that there was no authority specifically delegated by First Security to the petitioner to make any agreement on its behalf, either in writing or orally. Furthermore, the presence of the minority stockholders at the meeting, who also happened to be directors of First Security, with their attorney, was for the purpose of bidding on the stock in their individual capacity and not as representatives of the bank.

Mr. Baskins represented the Whitlake estates in the negotia-

tions. He testified that, "We weren't going to be a party to the redemption." [Tr. 100.] He knew of the plan, but was not a party to it. Factually, it is clear that petitioner was not acting as agent for First Security and had no authority to act as such, until petitioner acquired control of the stock of First Security. Subsequent ratification of the plan by First Security, once petitioner acquired control, does not create such an agency. The minority stockholders gave up their certificates and received payment before there could be any redemption. See *Walker v. Commissioner*, 544 F.2d 419 (9th Cir. 1976).

While everyone present may have known how petitioner proposed to raise the money with which to buy the stock, that knowledge did not serve to make him the agent of either the bank or the minority stockholders. It is necessary, therefore, to consider the transaction as one in which petitioner and his family, having acquired 500 shares of the stock of First Security, constituting all of its issued and outstanding stock, caused the bank to redeem 217 shares of such stock for $206,850, leaving the petitioner with the remaining 283 shares.

Section 302(a) provides that if a corporation redeems its stock, such redemption shall be treated as a distribution in part or full payment in exchange for the stock, subject to the limitation in subsection (b) that the rule shall apply only if the redemption is not essentially equivalent to a dividend. The term "dividend" is defined in section 316(a).

Whether the transaction in question resulted in the payment of a taxable dividend depends on the facts. *Sullivan v. United States*, 363 F.2d 724 (8th Cir. 1966), cert. denied 387 U.S. 905 (1967); *Idol v. Commissioner*, 319 F.2d 647 (8th Cir. 1963); *Sachs v. Commissioner*, 277 F.2d 879 (8th Cir. 1960), cert. denied 364 U.S. 833 (1960); *Heman v. Commissioner*, 283 F.2d 227 (8th Cir. 1960).

Applying the guidelines set forth by the Eighth Circuit in *Sullivan v. United States, supra,* it is clear that petitioner, constructively if not directly, received a taxable dividend. Any business purpose for the redemption by First Security of 217 shares of its stock was wholly lacking. When coupled with the simultaneous reissuance of the 217 shares as a stock dividend, there was no change in the capital and paid-in surplus of First Security. The only result was the distribution of $206,850 out of its earnings and profits.

From the standpoint of the petitioner, whether his obligation to purchase the stock was conditional or otherwise is immaterial. In accordance with a prearranged plan, he caused First Security to redeem 217 shares of its stock for $206,850 in order to meet that obligation. First Security did not enter into any negotiations for the repurchase of its stock. In fact, the bank could not be in the position simultaneously of redeeming its stock from different stockholders at different prices. The transaction could only come about after the petitioner owned or controlled all of the stock.

In its Findings of Fact, the Court has attempted to set forth the sequence of the various steps taken by petitioner in the acquisition of the stock of First Security. Respondent would trace the actual funds used in payment for the shares of the minority stockholders. Irrespective of such sequence, however, each step was part of an overall plan conceived by petitioner from the outset and presumably known to the sellers. The petitioner testified that in the event any step failed, it was understood that he would not be obligated to complete the purchase. This does not change the result. This Court may disregard the separate steps taken pursuant to a prearranged tax-avoidance plan and look to the end result. *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945); *Davant v. Commissioner*, 366 F.2d 874 (5th Cir. 1966); *United States v. General Geophysical Company*, 296 F.2d 86 (5th Cir. 1961); *King Enterprises Inc. v. United States*, 418 F.2d 511 (Ct. Cl. 1969); cf. *Smith v. Commissioner*, 537 F.2d 972 (8th Cir. 1976). Petitioner and his family ended up with 500 shares of the stock of First Security and a cash distribution of $206,850 chargeable to its earnings and profits. The cash distribution falls squarely within the definition of a dividend under section 316(a).

*Decisions will be entered for the respondent.*