594 F.2d 657
 79-1 USTC P 9234
 John B. ADAMS and Linda B. Adams, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Melvin H. ADAMS and Lucille B. Adams, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Melvin H. ADAMS, Jr. and Huberta A. Adams, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 Nos. 78-1570 to 78-1572.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 11, 1979.
Decided March 2, 1979.
 
 Kent O. Littlejohn, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb. (argued), and Michael L. Sullivan, Omaha, Neb. on brief, for appellants.
 Francis J. Gould, Atty., Tax Div., Dept. of Justice, Washington, D. C. (argued), M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, and Jonathan S. Cohen, Attys., Washington, D. C., on brief, for appellee.
 Before LAY, BRIGHT and STEPHENSON, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 This is a consolidated appeal by related taxpayers to review a decision of the tax court, 69 T.C. 1040 (1978), finding taxpayers liable for a deficiency of $115,969.65[1] in their federal income taxes for the 1972 taxable year. The deficiency is based on the tax court's conclusion that a redemption by First Security Bank of 217 shares of its stock was a taxable dividend to the taxpayers under I.R.C. § 316(a).[2]
 
 
 2
 The redemption was part of a purchase plan by which the taxpayers acquired the stock of First Security Bank of Sutherland, Nebraska (hereafter First Security). In August 1972 Melvin H. Adams, Jr. learned that the stock of First Security held by the Whitlake estates[3] was for sale. The Whitlake estates owned 335 of the 500 shares of First Security stock. The remaining 165 shares were owned by Arch W. Leu, 77.5 shares, Anne O. Watson, 77.5 shares, and John F. Fleak, 10 shares. Leu, Watson and Fleak were directors of First Security; the latter two also were officers of First Security.
 
 
 3
 The purchase plan developed by Adams called for First Security to redeem a portion of its stock, the proceeds for the redemption coming from its "Undivided Profits" account. Nebraska banking officials voiced no objection to the plan, provided the number of shares redeemed would be immediately reissued as a stock dividend so that First Security's capital and surplus accounts would remain intact. To facilitate the purchase Adams opened a checking account in the name of "Mel Adams, Agent" at the Keith County Bank and Trust Company, of which he was president.
 
 
 4
 On October 17, 1972, both Leu and Adams entered bids for the purchase of the Whitlake estates stock. Adams also conducted negotiations with Leu, Watson and Fleak concerning their minority interests (165 shares) in First Security. The tax court found that the negotiations resulted in an agreement whereby Adams would purchase the minority shareholders' stock for $820 per share if he were the successful bidder for the Whitlake estates stock. Adams then tendered a successful bid for the Whitlake estates stock of $1,350 per share. Adams thereupon issued a check on the "Mel Adams, Agent" account for $452,250 to the Whitlake estates' attorney, who in turn issued Adams a receipt acknowledging payment in full. At that time there were no funds in the "Mel Adams, Agent" account. The estates' attorney advised Adams, however, that the sale was subject to court approval. Adams gave additional checks dated October 18, 1972, totaling $135,300, drawn on the "Mel Adams, Agent" account, to the minority shareholders' attorney for purchase of their stock. In exchange for the checks, the minority shareholders endorsed their stock to First Security. Adams instructed that the latter checks were not to be released until his bid for the estates' stock received court approval.
 
 
 5
 On October 18, 1972, Adams, as "Mel Adams, Agent," entered into a purchase agreement with the administrator of the Whitlake estates for the purchase of 335 shares of First Security stock for $1,350 per share. The agreement provided that the buyer, Mel Adams, Agent, "shall have the right to assign (the purchase agreement), . . . provided he shall remain primarily and solely responsible for its performance."
 
 
 6
 On October 24, 1972, Adams' bid for the Whitlake estates stock received court approval. On that same date Adams deposited the proceeds of a loan for $135,300 in the "Mel Adams, Agent" account. The checks issued to the minority shareholders then cleared the account. Also on October 24 the certificates representing the stock owned by the Whitlake estates were delivered to Adams, of which 52 shares were endorsed to First Security. The remaining 283 shares were endorsed to Adams.
 
 
 7
 On October 25, 1972, First Security issued a stock certificate to Adams for the 283 shares transferred by the Whitlake estates. Adams endorsed the certificate as follows:
 
 
 8
 Transferee No. of Shares
 ---------- -------------
John B. Adams 10
Melvin H. Adams 20
Huberta A. Adams 10
Lucille B. Adams 10
Mel Adams 233
 
 
 9
 The new purchasers of First Security, i. e., the taxpayers, then held a special shareholders meeting. The minutes of that meeting recite that "Mel Adams had purchased the Bank initially for the group (taxpayers) as Mel Adams, Agent, . . . ." The minutes further recite that the taxpayers agreed "that 218 (sic) shares of stock be retired in the following manner:
 
 
 10
 Payment to minority stockholders for
 165 shares at $820/share = $135,300
Payment to estate stockholders for
 53 (sic) shares at $1350/share = 71,550
 --------
 Total $206,850
 
 
 11
 and a stock dividend be issued effective this date for 218 (sic) shares . . . ." In keeping with their agreement taxpayers caused First Security to redeem 217 shares which had been endorsed to First Security. Simultaneously taxpayers caused First Security to reissue 217 shares to Adams as a stock dividend.
 
 
 12
 On October 30, 1972, Adams deposited in the "Mel Adams, Agent" account the sum of $587,550, of which $380,700 represented the proceeds of a loan obtained by Adams and $206,850 represented the proceeds of First Security's redemption of 217 shares of its stock. The check of $452,250 for the Whitlake estates' stock then cleared the account. Adams used the remaining $135,300 to cover a prior debt for that amount.
 
 
 13
 The tax court considered the transaction as one in which the taxpayers, having acquired all of First Security's issued and outstanding stock, caused First Security to redeem 217 shares of its stock for $206,580. Applying the guidelines set forth by this court in Sullivan v. United States, 363 F.2d 724 (8th Cir. 1966), Cert. denied, 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967), the tax court found that First Security's redemption of its stock, when coupled with the simultaneous reissuance of 217 shares as a stock dividend, resulted in no change in the capital and surplus accounts and a distribution of $206,850 out of its earnings and profits. Accordingly, the tax court concluded that the taxpayers constructively, if not directly, received a taxable dividend.
 
 
 14
 On appeal taxpayers argue that the tax court erroneously characterized the issue. Taxpayers contend that First Security redeemed its stock not from themselves but from the selling shareholders. Accordingly, they urge the relevant inquiry should be whether First Security's redemption of stock relieved the taxpayers of a primary and unconditional obligation to purchase the redeemed stock, for only if taxpayers' obligation to purchase the redeemed stock was primary and unconditional would they incur tax liability for First Security's action. Taxpayers argue that Adams' bid to acquire all 335 shares owned by the Whitlake estates was conditioned upon a simultaneous redemption by First Security of a portion of the Whitlake estates' stock. Concerning the redemption of the remaining 165 shares taxpayers argue that Adams simply agreed to cause First Security to redeem such shares if he obtained control of First Security through acquisition of a controlling portion of the Whitlake estates stock.
 
 
 15
 Taxpayers seek the tax consequences of a "bootstrap" stock acquisition wherein a corporation redeems a portion of its stock owned by the existing or selling shareholders, thereby allowing the purchaser to acquire the corporation by paying only for the balance. Under this transaction, if properly structured, the purchaser would realize no taxable income due to the redemption of stock held by the selling shareholder. When the corporation redeems stock which a purchasing or continuing shareholder is not primarily and unconditionally obligated to buy, the remaining or purchasing shareholder does not receive a taxable distribution. Sullivan v. United States, supra; Holsey v. Commissioner of Internal Revenue, 258 F.2d 865, 868 (3d Cir. 1958); Wall v. United States, 164 F.2d 462, 464 (4th Cir. 1947); Rev.Rul. 69-608, 1969-2 C.B. 42; B. Bittker & J. Eustice, Federal Income Taxation of Corporations & Shareholders P 9.25 (3d ed. 1971). On the other hand, if the corporation redeems stock which the continuing or purchasing shareholder is primarily and unconditionally obligated to buy, the remaining or purchasing shareholder does receive a benefit and is deemed to have received a taxable dividend under I.R.C. § 316(a).
 
 
 16
 The tax court found it unnecessary to consider whether taxpayers were relieved of an unconditional obligation since the operative facts did not involve a so-called bootstrap acquisition. We agree. The tax court found that the taxpayers acquired the stock on their own behalf and then, after becoming the sole shareholders, caused the corporation to redeem their stock. Compare Television Industries, Inc. v. Commissioner of Internal Revenue,284 F.2d 322 (2d Cir. 1960); Lowenthal v. Commissioner of Internal Revenue, 169 F.2d 694 (7th Cir. 1948); Rev.Rul. 59-286, 1959-2 C.B. 103; Jassey, The Tax Treatment of Bootstrap Stock Acquisitions: The Redemption Route vs. The Dividend Route, 87 Harv.L.Rev. 1459, 1465 & n.20 (1974). The evidence clearly supports this finding.
 
 
 17
 The tax court also found that Adams was not an agent of either First Security[4] or the minority shareholders and concluded that he must have acquired all the shares for himself and his family. We think the record supports the tax court's conclusions. The evidence is undisputed that Adams " acquired" all the stock as "Mel Adams, Agent." Taxpayers concede that the minority shareholders' stock was delivered to Mel Adams, but argue that it was nonetheless endorsed to First Security. It is clear, however, that at that time of the endorsement the taxpayers were already the beneficial owners of that stock as well as the 52 shares from the Whitlake estates. Before the stock was redeemed Adams had given the full consideration of $135,300 to the minority shareholders and the check had cleared the agent's account. The monies received from First Security upon redemption of the stock was controlled by Adams and transferred to the agent account. It is clear that Adams, if not the owner, was the beneficial owner of the stock at the time of redemption. Compare Robert Deutsch, 38 T.C. 118 (1962). The 52 shares of stock purchased from the Whitlake estates were acquired pursuant to an agreement which recited that Adams was primarily and solely responsible for the purchase of such stock.
 
 
 18
 Taxpayers urge that the tax court erred in requiring a "business purpose test"[5] and in suggesting that First Security could not redeem its stock from different stockholders at different prices.[6] It is clear, however, that the tax court's finding that taxpayers owned or controlled all of the stock at the time of redemption is not dependent on either finding. Since the evidence supports the tax court's conclusion we need go no further.
 
 
 19
 Where "the stock is in reality purchased by a remaining shareholder and paid for by the corporation, then, regardless of the form of the transaction, the payment will be considered a dividend to the shareholder who made the purchase." Rev.Rul. 58-614, 1958-2 C.B. 920, 920-21. We find this proposition controlling here.
 
 
 20
 The decision of the tax court is affirmed.
 
 
 
 [1]
 The individual deficiencies of the taxpayers are:
 John B. Adams and
Linda B. Adams $ 787.55
Melvin H. Adams and
Lucille B. Adams 6,480.04
Melvin H. Adams, Jr. and
Huberta A. Adams 108,702.06
 -----------
 $115,969.65
 
 
 [2]
 Section 302(a) provides that if a corporation redeems its stock, such redemption shall be treated as a distribution in part or full payment in exchange for the stock, subject to the limitation in § 302(b) that the rule shall apply only if the redemption is not essentially equivalent to a dividend. A dividend is defined by § 316(a) to mean any distribution of property made by a corporation to its shareholders
 
 
 [3]
 The Whitlake estates refer to the estate of Frank E. Whitlake, which owned 257.5 shares of First Security stock, and the estate of Caroline C. Whitlake, which owned 77.5 shares of First Security stock
 
 
 [4]
 In the tax court the taxpayers urged that Adams was First Security's agent and therefore the redemption resulted in no taxable dividend. See Fox v. Harrison, 145 F.2d 521 (7th Cir. 1944). There was no evidence to support this theory and the tax court properly rejected this claim. Taxpayers have abandoned this theory on appeal
 
 
 [5]
 It is clear that " 'the business purpose of a transaction is irrelevant in determining dividend equivalence' under § 302(b)(1)." United States v. Davis, 397 U.S. 301, 312, 90 S.Ct. 1041, 1048, 25 L.Ed.2d 323 (1970). Under an earlier view a bona fide business purpose was included in a set of guidelines for determining dividend equivalency. See Sullivan v. United States, 363 F.2d at 728
 
 
 [6]
 The Commissioner similarly concedes this view to be incorrect. See, e. g., Nipp v. Puritan Manufacturing & Supply Co., 128 Neb. 459, 259 N.W. 53 (1935)