**UNITED STATES v. PATTERSON.**

No. 11399.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 7, 1953.

Decided April 23, 1953.

Mr. William Hitz, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Charles M. Irelan, U. S. Atty. at the time of argument, Washington, D. C., and Joseph M. Howard, Asst. U. S. Atty. at the time the brief was filed, Washington, D. C., were on the brief, for appellant. Mr. William E. Kirk, Jr., Asst. U. S. Atty. at the time of argument, Washington, D. C., also entered his appearance for appellant.

Mr. Vito Marcantonio, New York City, pro hac vice, by special leave of Court, with whom Mr. Ralph E. Powe, Washington, D. C., was on the brief for appellee.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

The Government appeals from the District Court's dismissal *sua sponte* of an indictment charging:

"Defendant William L. Patterson, by subpoena served upon him on August 3, 1950, was summoned as a witness by the authority of the House of Representatives of the Congress of the United States, through its Select Committee on Lobbying Activities, to produce before the said Committee records upon the matter under inquiry before the said Committee, that is, to produce documents of the Civil Rights Congress relating to (a) the organization and finances of the Civil Rights Congress, and (b) the activities of the Civil Rights Congress, its members, officers, directors, representatives, agents, and employees pertaining to legislation. Defendant Patterson appeared before the said Committee on August 4, 1950, in the District of Columbia, but failed and refused to produce the said records, and thereby wilfully did make default." [1]

The Select Committee on Lobbying Activities purported to act under House Resolution 298 which authorized it, *inter alia*, to "conduct * * * [an] investigation of

1. This constitutes Count Two of the original indictment. Count One was dismissed in a prior proceeding and is not in this appeal.

206 F.2d—28

* * * all lobbying activities intended to influence * * * legislation."[2] Because the District Court thought that the Federal Regulation of Lobbying Act,[3] requiring submission of information similar to that sought by the Committee here, was unconstitutional,[4] it concluded that House Resolution 298 was likewise defective.

That Resolution was under attack in United States v. Rumely,[5] recently decided by the Supreme Court after the District Court's action in the present case. The Court recognized the possible conflict between the "power of Congress to investigate" and the "limitation imposed by the First Amendment" but held that "[a]ccommodation of these contending principles * * * is not called for until after we [the Supreme Court] have construed the scope of the authority which the House of Representatives gave to the Select Committee on Lobbying Activities."[6] The Court's construction, following the view of this court in that case, limited the phrase "lobbying activities" to " 'lobbying in its commonly accepted sense,' that is, 'representations made directly to the Congress, its members, or its committees,' 90 U.S. App.D.C. 382, 391, 197 F.2d 166, 175."[7] And because the Court found the information sought beyond these limits of the Resolution, constitutional questions went unanswered.

■ Viewed in the light of Rumely, it is clear that the instant indictment rests upon a Committee subpoena that exceeded the authority delegated by Congress to the Committee in House Resolution 298. It is true that documents "relating to (a) the organization and finances of the Civil Rights Congress, and (b) the activities of the Civil Rights Congress * * * pertaining to legislation" might include matters pertinent to "representations made directly to the Congress, its members, or its committees." But it is equally clear that they are not so limited. An examination of the subpoena in question discloses that the Committee sought, *inter alia*, documents relating to "[a]ttempts or plans to influence such legislation, either directly or *indirectly.*"[8]

■ The Supreme Court has ruled: "One should not be held in contempt under a subpoena that is part good and part bad. The burden is on the court to see that the subpoena is good in its entirety and it is not upon the person who faces punishment to cull the good from the bad."[9] Logic dictates and principles of equal justice compel application of the same rule to an indictment for contempt which rests upon a congressional subpoena.

Thus we affirm dismissal of this indictment without reaching constitutional issues cast by House Resolution 298.[10]

2. 81st Cong., 1st Sess., (Aug. 12, 1949), printed in *Hearings before House Select Committee on Lobbying Activities*, 81st Cong., 2d Sess., pt. 1, p. 1 (1950).

3. 60 Stat. 839, 2 U.S.C.A. § 261 et seq. (1946).

4. The court below relied upon National Association of Manufacturers v. McGrath, D.C.D.C.1952, 103 F.Supp. 510, 514, which has since been vacated "with directions to dismiss the complaint upon the ground that the case is moot." McGrath v. National Association of Manufacturers, 1952, 344 U.S. 804, 73 S.Ct. 31.

5. 1953, 345 U.S. 41, 73 S.Ct. 543, 545.

6. 345 U.S. at page 44, 73 S.Ct. at page 545.

7. 345 U.S. at page 47, 73 S.Ct. at page 546.

8. *Hearings before House Select Committee on Lobbying Activities*, 81st Cong., 2d Sess., pt. 9, p. 27 (1950) (emphasis supplied).

9. Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879.

10. See United States v. Rumely, 1953, 345 U.S. 41, 48, 73 S.Ct. 543.