William J. **SULLIVAN** and Georgia K. Sullivan, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 18147.

United States Court of Appeals Eighth Circuit.

Aug. 3, 1966.

Rehearing Denied Sept. 15, 1966.

Renewed Petition for Rehearing and for Consideration thereof by Court En Banc Denied Oct. 31, 1966.

Claude R. Sanders, Kansas City, Mo., for appellants; Harry A. Morris, Kansas City, Mo., on the brief.

Edward L. Rogers, Attorney, Tax Division, Dept. of Justice, Washington, D. C., for appellee; Richard M. Roberts, Acting Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Lee A. Jackson, Melva M. Graney and William Friedlander, Attorneys, Tax Div., Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Mo., on the brief.

Before VOGEL, Chief Judge, BLACKMUN, Circuit Judge, and STEPHENSON, District Judge.

STEPHENSON, District Judge.

This is an appeal by the taxpayer[1] from the District Court's judgment (Sullivan v. United States, 244 F.Supp. 605 (W.D.Mo.1965)) denying recovery for that portion of his 1956 income taxes alleged to have been assessed and collected wrongfully. The taxpayer made a timely claim for a refund. Jurisdiction exists under the provisions of 28 U.S.C. § 1346 (a) (1).

The facts are set out in detail in the District Court's opinion. In brief, the taxpayer Sullivan purchased the assets of an automobile dealership in Blytheville, Arkansas in 1941. He then formed a corporation to operate the dealership. The individual who became resident manager of the dealership, Loy Eich, eventually acquired 120 shares of the 300 shares of stock outstanding—the rest

---

1. Georgia K. Sullivan, wife of taxpayer William J. Sullivan, is a party to this suit because a joint return was filed.

In this opinion, the taxpayers will be referred to as taxpayer or Sullivan.

being owned by taxpayer Sullivan. When Eich terminated his management of the dealership in February 1948, Sullivan purchased his 120 shares of stock. Thereafter, in September, 1948, Frank Nelson became the resident manager of the dealership under an arrangement which included an agreement permitting Nelson to acquire up to forty (40) per cent of the stock and further providing for taxpayer's repurchase of said stock upon Nelson's termination of his employment. After acquiring approximately 38% of the corporation's outstanding stock, Nelson announced his intention to depart from his position in 1956 and offered to sell his stock to taxpayer Sullivan. The corporation's Board of Directors then authorized the redemption of Nelson's stock by the corporation.

 The ultimate question before the District Court involved a determination of whether the payment by the corporation in redemption of Nelson's stock constituted a taxable distribution to taxpayer Sullivan, the sole remaining stockholder of the corporation. The District Court found that taxpayer Sullivan was unconditionally and primarily obligated to purchase Nelson's stock in 1956 and that said stock was purchased by the Corporation out of profits distributable as a dividend and therefore held that the taxpayer constructively received income equivalent to a dividend in the amount paid by the Corporation for said stock, ($198,334.58). Initially, an interpretation of the memorandum agreement entered into by Sullivan and Nelson at the time the latter assumed his managerial functions is necessary. The agreement contained the following provisions: [2]

"6. TRANSFER OF SHARES OF STOCK. It is understood and agreed that Sullivan is permitting Nelson to buy stock in said corporation for the purpose of giving him a working interest only, and said Nelson agrees that said shares of stock cannot and will not be mortgaged, hypothecated or transferred by him, his heirs, executor, administrator or trustee to any person other than William J. Sullivan or such person as said Sullivan directs in writing. Any such sale, delivery or transfer to any other person, firm or corporation shall be null and void. Said Sullivan agrees that he will, within thirty (30) days after such shares have been offered for sale to him, accept the offer to sell, provided always that such shares shall be offered for sale at a price to be determined according to this contract."

7. TERMINATION OF CONTRACT. Said Nelson agrees that if he should terminate his employment or relationship with William J. Sullivan or employment by the said corporation, and if his connection and association with the corporation should cease or be terminated by Sullivan or the majority owners of the stock of the corporation, then said Nelson agrees to sell and transfer and deliver to Sullivan at the then book value all shares of stock owned by him in the Sullivan-Nelson Chevrolet Co. * * * If said contract is terminated by Nelson or Sullivan as herein provided or by the death of Nelson, the value of the stock owned by Nelson shall be fixed and determined as set up in paragraphs four and five of this agreement. If said Nelson should die or become so disabled by injury or sickness as to become incapable of managing and operating the business, then said Sullivan shall have the immediate and exclusive rights to purchase the stock owned by Nelson or by his heirs, administrators or executors in accordance with the terms of this contract. Title so (sic) said shares of stock shall automatically rest in Sullivan upon Nelson's death and said Sullivan shall be obligated to Nelson's personal representative or representatives for the value thereof as fixed by this agreement."

On the face of the agreement it would appear that Sullivan obligated himself to

2. The memorandum agreement is set forth in more detail in the district court's opinion, 244 F.Supp. at 610–611.

purchase Nelson's stock when it was offered to him for sale. The petitioner contends, however, that such an interpretation is contrary to the intention of the parties to the agreement and is not in conformity with the circumstances existing at the time the parties entered into the agreement. On the basis of the parol evidence rule, the District Court refused to consider the taxpayer's evidence in this connection. Sullivan urges that the District Court erred in its application of the parol evidence rule in this instance because (1) the agreement herein is ambiguous and (2) a stranger to the agreement, such as the government cannot invoke the parol evidence rule. The parol evidence rule provides, essentially, that evidence of understandings and negotiations concerning a written instrument is inadmissible to vary, alter or contradict the terms of the written instrument when that instrument is complete, unambiguous, and valid and there is no claim of fraud, accident or mistake with respect to the evidence. 3 Corbin, Contracts, § 373 at 357–358 (1960); 32A C.J.S. Evidence § 851 at 211 (1964). In applying this general rule to the instant case, it would appear that the parol evidence rule would be inapplicable only if it were determined that the memorandum agreement between Nelson and Sullivan was ambiguous. After careful consideration of that agreement this Court is convinced that the agreement is not ambiguous. Under the terms of that agreement, Sullivan was obligated personally to purchase Nelson's shares of stock if the same were offered to him for sale. The restrictions contained in paragraph 6 limiting Nelson's use of his stock do not render Sullivan's obligation to purchase confused or ambiguous. The District Court was correct in rejecting Sullivan's contention that the memorandum agreement involved herein was ambiguous and in refusing to consider

evidence tending to vary or contradict his obligation under that agreement.

The taxpayer herein further urges that the district court erred in concluding that evidence of the intent and activities of the parties with respect to the agreement could be given no legal effect because of the parol evidence rule. There is language in the cases which seemingly supports the taxpayer's position on this point.[3] Noted commentators in the fields of contracts and evidence, however, have concluded that the invocation of the parol evidence rule by or against a stranger to a contract is permissible.[4] In any event, we are satisfied that the emergence of any contractual liability of the corporation here did not destroy, and was not intended to destroy, the obligation theretofore existing on the part of Sullivan to Nelson. Any comments in our opinions in Birmingham v. Bartels, 157 F.2d 295, 301 (8th Cir. 1946), reversed 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), and Reynolds v. Boos, 188 F.2d 322, 324 (8th Cir. 1951), afford no comfort to the taxpayer here when they are read in the light of the facts of those cases and of the comments' concern with recital or descriptive matter rather than with contractual obligation. The district court's conclusion as to the legal effect of the oral evidence was therefore not erroneous.

The taxpayer further contends that he was not unconditionally obligated to redeem Nelson's stock because there was no mutuality of obligation under the memorandum agreement. The contention is without merit. Both Sullivan and Nelson incurred obligations under the agreement. Sullivan obligated himself to purchase Nelson's stock thirty days after it was offered to him for sale. On the other hand, Nelson agreed that he would not mortgage, hypothecate or transfer his stock without Sullivan's consent. The

---

3. See, e. g., Smith v. Commissioner of Internal Revenue, 324 F.2d 725 (9th Cir. 1963); Bardwell v. Commissioner of Internal Revenue, 318 F.2d 786 (10th Cir. 1963); United States v. Patterson, 92 U.S.App.D.C. 222, 206 F.2d 433 (1953).

4. See 3 Corbin, Contracts § 596 at 572–578 (1960); IX Wigmore, § 2446 (3d ed. 1940); 4 Williston, Contracts § 647 at 1161 (3d 1961).

memorandum agreement clearly evidences a mutuality of obligation. The District Court was justified in concluding that Sullivan was unconditionally obligated to purchase Nelson's stock.[5]

■■ At this juncture, the payment by the corporation to Nelson presents two basic questions: (1) Was that payment in actuality a dividend and therefore includable in Sullivan's gross income under §§ 61(a) (7), 316(a) and 301(c) (1) of the Internal Revenue Code? (2) If the payment is considered as a corporate redemption of stock, was the payment includable in Sullivan's gross income as being essentially equivalent to a dividend within the meaning of § 302(b) (1)? This court has recognized that both questions are to be resolved as fact issues. Idol v. Commissioner of Internal Revenue, 319 F.2d 647 (8th Cir. 1963). If a finding is supported by substantial evidence on the record as a whole and is not against or induced by an erroneous view of the law, it will not be disturbed on appeal.

■ When an individual shareholder receives an economic benefit through a diversion of corporate earnings and profits, such a receipt may be taxed as a constructive dividend.[6] This court set forth a criteria for determining whether a payment constitutes a constructive dividend in Sachs v. Commissioner of Internal Revenue, 277 F.2d 879, 882–883 (8th Cir. 1960):

"The motive, or expressed intent of the corporation is not determinative, and constructive dividends have been found contrary to the expressed intent of the corporation. The courts, as arbiters of the true nature of corporate payments, have consistently used as a standard the measure of receipt of economic benefit as the proper occasion for taxation." (footnote omitted)

■ This court has also adopted criteria for determining whether a redemption of stock is essentially equivalent to a dividend. See Heman v. Commissioner of Internal Revenue, 283 F.2d 227, 230–231 (8th Cir. 1960); United States v. Carey, 289 F.2d 531, 537 (8th Cir. 1961). While there is no sole decisive test in this connection, the several guidelines for the determination include "whether there is a bona fide corporate business purpose, whether the action was initiated by the corporation or by the shareholders, whether there was a contraction of the business, and whether there was a substantial change in proportionate stock ownership." Idol v. Commissioner of Internal Revenue, 319 F.2d 647, 651 (8th Cir. 1963). In addition, the Court has observed that the "net effect of the transaction is at least an important consideration in determining dividend equivalency." United States v. Carey, supra, 289 F.2d at 537. Also see Ballenger v. United States, 301 F.2d 192, 196–198 (4th Cir. 1962); Ferro v. Commissioner of Internal Revenue, 242 F.2d 838, 841–842 (3d Cir. 1957).

■ The general net effect and the purpose of and circumstances surrounding the transaction involved herein must be carefully scrutinized to ascertain whether Sullivan received a taxable dividend. Prior to the transaction, Sullivan held approximately 62% of the shares outstanding while Nelson owned the remaining shares. As previously discussed, Sullivan was unconditionally obligated to

5. The taxpayer makes an alternative argument to the effect that, even if he was unconditionally obligated to purchase Sullivan's stock, subsequent events constituted a modification or novation of that agreement. Even if this contention is accepted, the court is at a loss as to how the taxpayer is aided. The novation or modification itself would be considered as resulting in an economic benefit and possible constructive dividend taxable against Sullivan. The taxpayer would be left in essentially the same position with respect to his possible tax liability.

6. Sachs v. Commissioner of Internal Revenue, 277 F.2d 879, 882 (8th Cir. 1960); Greenspon v. Commissioner of Internal Revenue, 229 F.2d 947, 956 (8th Cir. 1965); Byers v. Commissioner of Internal Revenue, 199 F.2d 273 (1952); cert. denied, 345 U.S. 907, 73 S.Ct. 646, 97 L.Ed. 1343 (1953).

purchase Nelson's stock if it was offered to him for sale. After the transaction was completed, the relevant facts were essentially as follows: (1) Sullivan's personal obligation had been discharged (2) Sullivan owned all of the outstanding shares of stock of the corporation (3) the corporation's assets were decreased by the amount paid to Nelson for his stock (4) Nelson's stock was held by the corporation as treasury stock. It is true that in terms of the financial worth of Sullivan's interest in the corporation, it was the same after the transaction as it was before.[7] The transaction still resulted in an economic benefit to Sullivan, however, because he was relieved of his personal obligation to purchase Nelson's stock.[8] After careful consideration this court concludes that there was no corporate business purpose or other factor which justifies the taxpayer's position that as to him the payment must be considered a stock redemption and not the equivalent of a dividend.[9] On the facts of this case, Sullivan received a taxable dividend as the result of the corporation's purchase of Nelson's stock.

 This court is aware that it is often difficult to distinguish true substance from mere form. Tax law places some weight and significance on form and the choice of one alternative rather than another for achieving a desired end is often critical and may be determina-

tive of the tax effect of a transaction.[10] Judge Becker's opinion comprehensively deals with the evidence and the applicable law of this case. The taxpayer has failed to establish grounds for reversal. The judgment of the District Court is affirmed.

---

7. Prior to the transfer of Nelson's stock Sullivan owned 186 shares of the 300 shares outstanding. His stock at this time was worth approximately $323,597.-00. After the transfer, his 186 shares were the only outstanding stock of the corporation. Due to the corporate purchase of Nelson's stock, however, the value of the taxpayer's shares remained at approximately $323,597.00.

8. Sullivan was obligated to purchase Nelson's stock when it was offered to him for sale. Such an offer to sell was contained in Nelson's letter to Sullivan which is included in the District Court's opinion. 244 F.Supp. at 615.

9. The taxpayer has strongly urged that there was a corporate business purpose motivating the purchase of Nelson's stock

because of the valuable services received from him as resident manager of the corporation. The services had already been performed, however, when the stock was purchased. Moreover, it was Sullivan, not the corporation, who was obligated to purchase the stock. Under these circumstances, the District Court properly found that the purchase was not induced by a business purpose. The net effect of the transaction further indicates that a dividend was received by the taxpayer.

10. See Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 288, 66 S.Ct. 532, 90 L.Ed. 670 (1946); Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Idol v. Commissioner of Internal Revenue, 319 F.2d 647 (8th Cir. 1963).