ALLAN MOLASKY AND GLORIA MOLASKY, Petitioners v. COMMISSIONER INTERNAL REVENUE, Respondent
Molasky v. Commissioner
Docket No. 473-86.
United States Tax Court
T.C. Memo 1988-173; 1988 Tax Ct. Memo LEXIS 202; 55 T.C.M. (CCH) 672; T.C.M. (RIA) 88173; April 25, 1988. David C. Salivar, for the petitioners. Robert J. Burbank, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the 1981 taxable year in the amount of $ 208,524. The issue before us is whether and to what extent petitioner Allan Molasky recognized income under section 61(a) [1] for payments allocated to a covenant not to compete in connection with a sale of a distributorship. FINDINGS OF FACT Some of the *203 facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Allan Molasky ("petitioner") and Gloria Molasky are married individuals who filed a joint Federal income tax return for the 1981 calendar year. They resided in Ballwin, Missouri, at the time they filed the petition herein. Beginning around 1950, petitioner's father became a wholesale distributor in the New Orleans, Louisiana, metropolitan area of a daily horse racing publication called the Daily Racing Form (the "Racing Form"). Petitioner took over the wholesale distributorship around 1960. The Racing Form is a national publication which is published by an unrelated third party, Daily Racing form, Inc. (the "publisher"). The Racing Form provides individuals who bet on horses racing at racetracks around the country with pertinent information regarding the past performances of jockeys and horses, including a handicapper's predictions as to outcomes of particular horse races in each locality. On January 26, 1981, Racing Services, petitioner, and Mark Molasky, petitioner's son, entered into an agreement (the "Agreement") with Anco *204 News Company, Inc. ("Anco") regarding the transfer of the Racing Form distributorship to Anco. The Agreement can be broken down into essentially two separate contractual obligations. The first contractual obligation effectuated a sale from Racing Services to Anco of various assets related to the distribution of the Racing Form in New Orleans. This portion of the contract assigned a value to each of those assets or set of assets sold as follows: two vans and miscellaneous office equipment - $ 5,000; distribution records - $ 10,000; customer lists and good will - $ 500. The values assigned to the tangible assets are reflective of their fair market value. The second contractual obligation involved a covenant not to compete (sometimes hereinafter referred to as the "covenant") which prohibited Racing Services, petitioner, and Mark from competing with Anco in the sale or distribution of the Racing Form within New Orleans for a period of one year and eleven months. The value assigned to the covenant not to compete was $ 354,200 and was payable to the convenantors. No amount was specifically allocated to the covenantors individually. The Agreement to transfer the Racing Form distributorship *205 was executed after a series of arm's-length negotiations by petitioner and Mark with the corporate officers of Anco. Petitioner and Mark were not represented by counsel while Anco was represented by counsel. Petitioner was involved in all of these negotiations, while Mark became involved only toward the end of these negotiations. Anco intended to make a large investment in capital and human resources to establish a profitable Racing Form distributorship in New Orleans. Anco believed that such an investment was at risk in that petitioner could reenter the market by reacquiring distribution rights from the publisher and thereafter compete with Anco in the wholesale distribution of the Racing Form in New Orleans. Anco was not willing to make such a large investment unless it had some assurance, by virtue of a covenant not to compete, that it would be protected from competition by petitioner for enough time to establish to the publisher that it could adequately distribute the Racing Form and meet its financial obligations. Anco's concerns regarding potential competition by petitioner were based, in part, on the fact that it had no prior business involvement with the publisher *206 while petitioner's and his father's combined involvement with the publisher extended for over 30 years. An equally significant basis for Anco's concerns was that the business arrangement between the publisher and a wholesale distributor was extremely informal. The publisher would not enter into formal written contracts with any of its wholesale distributors, including Anco, but relied solely on informal verbal agreements. Furthermore, the publisher did not consider itself legally prohibited from entering into distribution arrangements with additional wholesale distributors for each of its areas of distribution though its practice and policy over many years has been to maintain an exclusive relationship with just one wholesale distributor within each metropolitan area. Anco considered potential competition from petitioner to be a much more significant threat than potential competition from Mark or Racing Services. It was Anco's understanding that petitioner was actively involved in the distribution of the Racing Form while Mark was not so involved but, rather, was involved in the distribution of magazines to retail bookstores. In addition, Mark was perceived by Anco as a poor *207 businessman. A convenant not to compete from Racing Services and Mark, exclusive of petitioner, would not have given Anco the protection from competition it was seeking. Respondent has taken inconsistent positions and has issued separate notices of deficiency to petitioner and Mark claiming, alternatively, that each is taxable on the entire $ 354,200 allocated in the Agreement to the covenant not to compete. Mark did not file a petition with this Court and is not a party to this case. [2] We must determine whether the deficiency in the amount set forth above is correct as to petitioner only. OPINION The sole issue in this case is whether the payment by Anco of $ 354,200 for a covenant not to compete in connection with the acquisition of distribution rights to the Racing Form in New Orleans is taxable to petitioner. The Agreement specifically provided that $ 354,200 was allocated to the covenant not to compete and was payable to Racing Services, petitioner, and Mark. The Agreement also specifically provided that $ 500 was allocated to goodwill and customer lists and was *208 payable to Racing Services. The remaining consideration was allocated to tangible assets and was payable to Racing Services. Petitioners contend that the entire $ 354,200 allocated to the covenant was actually paid for goodwill and, as such, is not taxable to petitioners. Respondent contends that petitioners are bound to the allocations as drafted in the Agreement and accordingly, $ 354,200 was paid for the covenant. Respondent further contends that Anco bargained for the covenant, not from Mark or Racing Services, but solely from petitioner because petitioner alone was perceived by Anco as the competitive threat. Respondent's determination is presumptively correct. Groetzinger v. Commissioner,87 T.C. 533, 540 (1986). Petitioners bear the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Wilmot Fleming Engineering Co. v. Commissioner,65 T.C. 847 (1976); Rule 142(a). The fact that respondent has made inconsistent determinations as to both petitioner and Mark for the same deficiency does not destroy the presumption that respondent's determination is correct. Hoeme v. Commissioner,63 T.C. 18 (1974). *209 An unambiguous allocation of consideration in a contract may be reallocated for Federal tax purposes where a party to the contract presents "strong proof" that an asserted reallocation is based on the intent of the parties at the time the contract was entered into and that such asserted reallocation has independent economic significance. Major v. Commissioner,76 T.C. 239, 247 (1981); see also G C Services Corp. v. Commissioner,73 T.C. 406 (1979); Lazisky v. Commissioner,72 T.C. 495, 501 (1979), affd. sub nom. Magnolia Surf, Inc. v. Commissioner,636 F.2d 11 (1st Cir. 1980). Respondent asserts that the Eighth Circuit, to which an appeal would lie in this case, would not apply the "strong proof" standard. We agree with respondent. In Sullivan v. United States,363 F.2d 724 (8th Cir. 1966), the Eighth Circuit permitted the government to assert the parol evidence rule against the taxpayer for Federal tax purposes. The parol evidence rule as stated by Sullivan provides that "evidence of understandings and negotiations concerning a written instrument is inadmissible to vary, alter or contradict *210 the terms of a written instrument when that instrument is complete, unambiguous, and valid and there is no claim of fraud, accident or mistake with respect to the evidence." Sullivan v. United States, supra at 727. [3]
We find that the allocation of $ 354,200 to the covenant as stated in the Agreement is complete, unambiguous and valid. Further, petitioner was a person of considerable business experience and was actively involved in what were arm's-length negotiations leading up to the execution of the Agreement. Petitioners have made no claims of fraud, accident or mistake, nor would the record support such claims if made. Accordingly, we hold that no payment allocated to *211 the covenant not to compete may be reallocated to goodwill for Federal tax purposes. [4] See Sullivan v. United States, supra.
Since we have determined that the covenant should be respected for Federal tax purposes, we must determine what portion, if any, of the payments pursuant to the covenant are taxable to petitioner as opposed to the other covenantors, Mark and Racing Services. Our inquiry is purely factual and requires a finding as to what portion of the payments made by Anco pursuant to the covenant was consideration for petitioner's as opposed to Racing Services' or Mark's covenant not to compete. The portion that is consideration for petitioner's covenant not to compete is taxable to petitioner. See Lucas v. Earle,281 U.S. 111 (1930); American Savings Bank v. Commissioner,56 T.C. 828 (1971). The Agreement is silent as to the allocation of the consideration for the covenant among the covenantors. Since petitioners are *212 not here contradicting the express terms of the Agreement, they must only show by a preponderance of the evidence that the consideration allocated to the covenant is not attributable to petitioner. See Peterson Machine tool, Inc. v. Commissioner,79 T.C. 72, 82 (1982), affd. 84-2 USTC par. 9885, 54 AFTR 2d 84-5139 (10th Cir. 1984); Kinney v. Commissioner,58 T.C. 1038 (1972). After reviewing the evidence before us, particularly that Anco considered the threat of competition from petitioner to be much more significant than potential competition from Mark or Racing Services, we hold that the payments allocated to the covenant are in large part in consideration for petitioner's covenant not to compete and are therefore taxable to petitioners as to such position. See Lucas v. Earl, supra; Jones v. Commissioner,64 T.C. 1066 (1975). Based on the entire record before us and relying on principles similar to those set forth in Cohan v. Commissioner,74 T.C. 260, 268 (1980), modified on other grounds 649 F.2d 152 (2d Cir. 1981), we concluded that $ 324,000 of the payments for the covenant not *213 to compete are attributable to petitioner and are accordingly taxable to petitioners. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 19854, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent had not, as of the date of trial, issued a notice of deficiency to Racing Services. ↩
3. See Coca-Cola Co. v. Commissioner,369 F.2d 913 (8th Cir. 1966), where the Eighth Circuit stated: we are not favorably impressed with the plea that a court should rewrite a contract and relieve the taxpayer of the plight, taxwise, in which it finds itself, a dilemma which in our view is the creation of its own deliberate judgment.
See also Burstein, "The Impact of Form, and Disavowing Form, on the characterization of Sales Transactions," 66 Taxes 220↩ (1988). 4. We do not address the issue of whether petitioners would have been taxable on any payments reallocated to goodwill if they were successful in proving such a reallocation for Federal tax purposes. ↩