Allan & Gloria **MOLASKY**, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Appellee.

No. 88–2734.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided Feb. 27, 1990.

Rehearing Denied May 10, 1990.

---

David Sosne, Clayton, Mo., for appellants.

David I. Pincus, Washington, D.C., for appellee.

Before FAGG, Circuit Judge, FLOYD R. GIBSON and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Allan and Gloria Molasky, husband and wife, appeal the tax court's decision assessing a $187,649.00 deficiency in income tax due for the 1981 tax year. On appeal, the Molaskys contend that the tax court erroneously upheld a $354,200 noncompetition provision in an agreement negotiated by Allan Molasky for the sale of a family business, a closely held corporation. The Molaskys further contest the tax court's conclusion that $324,000 of the $354,200 noncompetition provision constituted personal income to Allan Molasky.[1] The Molaskys also allege error in the tax court's refusal to use income averaging to compute their tax deficiency [2] and contend that Gloria Molasky should not be held liable for the deficiency. We determine that $129,-777.08 of the $354,200.00 noncompetition provision comprised income to the corporation and therefore remand with instructions that the tax court determine how much of the remaining $224,422.92 constituted compensation to Allan Molasky. We reject the Molaskys' other contentions.

## I. BACKGROUND

Beginning in the 1950s, Allan Molasky's father operated the New Orleans area distributorship for a horse racing publication known as the *Daily Racing Form.* In 1960, Allan Molasky took over the business and, until 1981, operated the distributorship through a variety of corporate forms, most of which went bankrupt. In 1980–81, a regional distribution business called Anderson News Company (ANCO) expressed an interest in purchasing the distributorship, and Molasky, again in debt, agreed to sell.

At the time of the sale, the distributorship operated under the name of Racing Services, Inc. (Racing Services). Although Molasky's daughter, Marti Ellen Rose, technically owned Racing Services, Allan Molasky personally guaranteed its corporate debts and managed its daily affairs.[3] Molasky also wrote numerous checks for personal expenses from the corporation's account. Racing Services was a subsidiary corporation of Melanjo Investments, Inc., of which Allan Molasky was president.

After substantial negotiation, the parties reached an agreement for ANCO to purchase the distributorship and its assets for

---

1. The tax court memorandum discussing these points is unofficially reported at 55 T.C.M. (CCH) 672 (1988).

2. The tax court opinion on this issue is reported at 91 T.C. 683 (1988).

3. The Molasky family organized Racing Services, a closely held corporation, after Allan Molasky's previous distributorship filed for bankruptcy in 1976. Shortly thereafter, the publisher of the *Daily Racing Form* refused to do business with Racing Services without personal guarantees. While Allan Molasky gave such a guarantee, his daughter, Racing Services' sole shareholder, refused to. In addition, Molasky's daughter took no part in later negotiations for the corporation's sale.

$369,700. The first section of the sales agreement allocated $15,000 of the purchase price to tangible assets and $500 to goodwill. Section 2 of the agreement allocated the remaining $354,200 to a noncompetition provision which read, in relevant part, as follows:

2. *Covenant Not to Compete.*

2.1 The Company and the Molaskys, jointly and severally, covenant and agree that for the period from the closing date to December 31, 1982 they will not, directly or indirectly, either as principal, broker, agent, stockholder (owning 5% or more of the outstanding stock of any class), or as a partner, officer, director, trustee, employee, consultant or member of a board of directors or board of trustees of any person, firm or corporation, or otherwise, or in any other capacity, engage in, have a financial interest in, as lender or guarantor or otherwise, or carry on any business which is engaged in, the wholesale sale or distribution of the Daily Racing Form within the geographical area of which has a radius of 30 miles from the center of the city of New Orleans, except as consultant to or employee of the Buyer. The Company and the Molaskys agree that any breach by them, or by any of them, of this covenant shall entitle the Buyer, in addition to any other remedies available to it, to apply to any court of competent jurisdiction to enjoin such breach.

2.2 In consideration of the Company's and the Molaskys' covenant not to compete, as provided above, the Buyer agrees to pay to them at the closing hereunder the sum of $354,200 reduced by the amount owed by the Company to the publisher of the Daily Racing Form on the Effective Date, which Buyer agrees to assume and pay.

An attorney represented ANCO during the sales negotiations, while Allan Molasky bargained either on his own or assisted by his son, Mark Molasky, a lay businessman. In negotiations, Allan Molasky informed ANCO representatives that the amount of the purchase price allocated to the noncompetition provision made no difference to him so long as the check went to Racing Services.

On February 3, 1981, pursuant to the sales agreement, ANCO deposited $250,122.98 into Racing Services' bank account and wired the publisher of the *Daily Racing Form* a payment of $129,777.08 to satisfy Racing Services' corporate obligations.[4] Thereafter, ANCO deducted the amount allocated to the noncompetition provision from its corporate tax returns.

When the IRS conducted an audit in 1983–84, neither Allan Molasky, Mark Molasky nor Racing Services had reported the amounts received pursuant to the noncompetition provision. In response to the audit, Allan Molasky filed a belated return which reported the entire $354,200 as income to Melanjo Investments, Inc., which had substantial (*i.e.*, totally offsetting) losses. Not surprisingly, the Commissioner disagreed with this allocation and charged the entire $354,200 to Allan Molasky and his spouse, Gloria Molasky, as personal income. The Commissioner simultaneously filed an alternative notice of deficiency against Mark Molasky for the same amount ($354,200).

Allan and Gloria Molasky subsequently contested the Commissioner's determination in the tax court,[5] contending that the entire $354,200 allocated to the noncompetition provision in actuality represented a payment for goodwill. Following a trial, the tax court upheld the allocation but reduced the amount taxable to the Molaskys from $354,200 to $324,000, noting that Allan Molasky was the provision's primary, but not singular, target. The tax court then addressed the issue of computation in a separate proceeding, *see* Tax Ct. R. 155, and ultimately calculated the Molaskys' tax deficiency at $187,649.00. In determining the deficiency, the tax court refused the Molaskys' request, raised after trial, to use

---

**4.** For an unknown reason those two checks exceed the amount ANCO owed under the sales agreement by $10,200.06.

**5.** Mark Molasky was not a party to this lawsuit.

income averaging as the method of computation.

## II. DISCUSSION

### A. Noncompetition Agreement

■ The parol evidence rule prohibits parties from introducing extrinsic evidence to vary or contradict the terms of a complete, valid and unambiguous written instrument, absent a claim of fraud, duress, accident or mistake. *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1300 (8th Cir.1980); *Sullivan v. United States*, 363 F.2d 724, 727 (8th Cir.1966), *cert. denied*, 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967). Relying on this circuit's holding in *Sullivan*, 363 F.2d at 726–27, the tax court applied the parol evidence rule to the sales agreement Allan Molasky negotiated with ANCO and upheld the $354,200 allocation in the noncompetition provision. Specifically, the tax court concluded the agreement was unambiguous and further reasoned that Allan Molasky's considerable business experience and ability to negotiate at arm's length supported this determination. The Molaskys maintain that the tax court erred in several respects.

First, the Molaskys contend that the tax court's application of the parol evidence rule erroneously elevated form over substance. Specifically, the Molaskys argue that ANCO's allocation of ninety-six percent of the sales price to the noncompetition provision failed to comport with economic reality. According to the Molaskys, neither Allan Molasky, Mark Molasky nor Racing Services presented any competitive threat to ANCO because the publishers of the *Daily Racing Form* had always done exclusive business with only one distributor. Therefore, reason the Molaskys, much of the amount allocated to the noncompetition provision actually represented a purchase of goodwill in the form of the right to distribute the racing track publication.

Our position on the application of the parol evidence rule in tax cases has not been entirely consistent. *Compare Sullivan*, 363 F.2d at 727 (upholding exclusion of taxpayer's parol evidence) *with Reynolds v. Boos*, 188 F.2d 322, 323–25 (8th Cir.1951) (allowing taxpayer's parol proof) *and Birmingham v. Bartels*, 157 F.2d 295, 300–02 (8th Cir.1946) (same), *rev'd on other grounds*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947). In this case, however, the Molaskys do not argue that the Commissioner, as a stranger to the contract, was not entitled to assert the parol evidence rule, *cf. Lemke v. Sears, Roebuck & Co.*, 853 F.2d 253, 255 (4th Cir.1988); *Fulton v. L & N Consultants, Inc.*, 715 F.2d 1413, 1418–19 (10th Cir.1982), nor do they allege that applicable state law permitted parol proof to interpret the property rights at issue in the sales agreement, *cf. Magneson v. Commissioner*, 753 F.2d 1490, 1495 (9th Cir.1985) (state law determines nature of taxpayer's legal interests in allegedly taxable property). Consequently, in view of the tax court's finding that Allan Molasky possessed considerable business experience and presented a substantial competitive threat, we conclude that the tax court did not err in holding the Molaskys to the terms of the agreement which Allan Molasky capably negotiated. Additionally, we determine that the record does not support the Molaskys' related contention that the Commissioner failed to object to the parol evidence introduced at trial.

The Molaskys next contend that indisputable ambiguities in the noncompetition provision rendered the parol evidence rule inapplicable. In our view, however, a fair reading of the sales agreement supports the tax court's finding that the sales agreement unambiguously allocated $354,200 to the noncompetition provision.

The Molaskys further contend that the parol evidence rule should not apply because ANCO inserted the noncompetition provision for its sole benefit, which rendered the transaction a sham. The Molaskys failed to raise this issue before the tax court and we decline to address it here.

### B. Amount Attributable to Allan Molasky

■ The tax court, upon concluding that the sales agreement failed to allocate the $354,200 of consideration for the noncompetition provision among Allan Molasky,

Mark Molasky and Racing Services, attributed $324,000 from the provision to Allan Molasky. In reaching this figure, the tax court reasoned that the provision most likely targeted Allan Molasky because neither Racing Services nor Mark Molasky presented much of a competitive threat.[6] We agree with the Molaskys that this division was erroneous.

The sales agreement, by its plain language, provided that a portion of the noncompetition provision would be applied directly to Racing Services' debt to the publisher of the *Daily Racing Form*. The noncompetition provision expressly allocated the amount of this obligation, totalling $129,777.08, to the corporation, and neither Allan nor Mark Molasky received any portion of it. Therefore, the amount attributable to Racing Services under the noncompetition provision was at least $129,777.08. The agreement left the remaining amount, $224,422.92, unallocated among Allan Molasky, Mark Molasky and Racing Services. On remand, the tax court therefore should consider what portion of the unallocated $224,422.92 comprised compensation to Allan Molasky.

We cannot agree with the Molaskys' additional contention that the Commissioner is estopped from proceeding against Allan and Gloria Molasky for the income received under the noncompetition provision merely because the Commissioner assessed a deficiency against Mark Molasky for the same amount. The Commissioner may issue alternative notices of deficiency in order to protect revenues. *Estate of Goodall v. Commissioner*, 391 F.2d 775, 781–84 (8th Cir.), *cert. denied*, 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100 (1968).

We reject, as well, the Molaskys' assertion that they fulfilled their tax obligation by belatedly reporting the $354,200 on the corporate tax return for Melanjo Investments, Inc. Because income is taxable to those who earn it, *Lucas v. Earl*, 281 U.S. 111, 114–15, 50 S.Ct. 241, 241, 74 L.Ed. 731

(1930), the Molaskys cannot shift the income earned by Allan Molasky individually to their family corporation.

## C.  Income Averaging

■  The Molaskys contend that the tax court abused its discretion in refusing their post-trial request, raised for the first time during the tax computation phase, *see* Tax Ct. R. 155, to compute their deficiency using the income averaging method. According to the Molaskys, the income averaging request did not raise a new factual issue outside the scope of the Rule 155 proceeding, but rather presented a purely mathematical calculation. We disagree.

The Molaskys failed to raise the income averaging issue in their complaint or put the information necessary to the computations into evidence at trial. In fact, the Molaskys raised the issue over a year after the trial and nearly three months after the tax court's initial finding of deficiency. Under these circumstances, the tax court did not abuse its discretion in prohibiting consideration of the income averaging issue during the Rule 155 proceeding. *See Scallen v. Commissioner*, 877 F.2d 1364, 1375–76 (8th Cir.1989).

## D.  Innocent Spouse Doctrine

We decline to address the Molaskys' final contention that Gloria Molasky should be exempt from liability for the present deficiency under the innocent spouse doctrine, *see* 26 U.S.C. § 6013(e) (1976) (current version at 26 U.S.C. § 6013(e) (Supp. V 1987)). The Molaskys raise this issue for the first time on appeal and have failed to demonstrate that manifest injustice would result from this court's refusal to address it.

## III.  CONCLUSION

We affirm the tax court's decision as to the allocation of $354,200 to the noncompetition provision and the refusal to use the income averaging method of computation. We must reverse insofar as the decision

---

**6.** The tax court did not indicate, however, whether the amount attributed to Allan Molasky was computed based on a percentage of the total provision or some other method. The tax court also did not determine how much of the remaining $30,200 was attributable to Mark Molasky and Racing Services respectively.

attributes $324,000 from the noncompetition provision to Allan Molasky, however, because in our view at least $129,777.08 of the provision comprised consideration to Racing Services. Accordingly, we remand for a determination of what portion of the remaining $224,422.92 should be allocated to Allan Molasky. Finally, we refuse to consider the improperly preserved contention that Gloria Molasky is an innocent spouse.