153 T.C. No. 6

UNITED STATES TAX COURT

EATON CORPORATION AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 5576-12.                    Filed October 28, 2019.

P and R entered into two advance pricing agreements (APAs)
establishing a transfer pricing methodology for covered transactions
between P and its subsidiaries.  Following our previous opinion
holding that R's determination to cancel the APAs for tax years 2005
and 2006 was an abuse of discretion, the parties were required to
submit computations for entry of decision under Tax Court Rule 155.
The parties have not reached agreement.  R's position is that the
computations should include 40% penalties pursuant to I.R.C. sec.
6662(h).  P's position is there were no adjustments pursuant to I.R.C.
sec. 482.

Held:  No adjustments were made pursuant to I.R.C. sec. 482.

Held, further, P is not liable for penalties pursuant to I.R.C. sec.
6662(a), (b)(3), (e), and (h) for tax years 2005 and 2006.

_____

[*]This Opinion supplements Eaton Corp. & Subs. v. Commissioner, T.C.
Memo. 2017-147.

Joel V. Williamson, John T. Hildy, Charles P. Hurley, Brian W. Kittle, Erin G. Gladney, Geoffrey M. Collins, James B. Kelly, John W. Horne, Rajiv Madan, Royce L. Tidwell, Christopher P. Murphy, Nathan P. Wacker, and Pamela C. Martin, for petitioner.

John M. Altman, Justin L. Campolieta, Ronald S. Collins, Jr., Matthew J. Avon, Michael S. Coravos, Michael Y. Chin, Jennifer A. Potts, Laurie Nasky, and William T. Derick, for respondent.

SUPPLEMENTAL OPINION

KERRIGAN, Judge:  On July 26, 2017, the Court filed its opinion in this case Eaton Corp. & Subs. v. Commissioner (Eaton II), T.C. Memo. 2017-147, which stated at the end:  "Decision will be entered under Rule 155."[1]  The parties have been unable to reach an agreement on computations.  On October 22, 2018, the Court held a hearing regarding computations pursuant to Rule 155.

The computations of the Internal Revenue Service (IRS or respondent) include 40% penalties pursuant to section 6662(h).  Petitioner is opposed to the

---

[1] All section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

inclusion of the section 6662(h) penalties. The parties reached an agreement concerning the amounts of the deficiencies, and the agreed-upon amounts are lower than the amounts determined in the notice of deficiency. The issue for our consideration is whether petitioner is liable for section 6662(h) penalties for tax years 2005 and 2006 (years in issue).

Background

Petitioner, an Ohio corporation, is a global manufacturer of electrical and industrial products. During the years in issue petitioner was the parent corporation of a group of consolidated corporations and multinational affiliated subsidiaries.

This case involves the cancellation of two advance pricing agreements (APAs) establishing a transfer pricing methodology (TPM) for covered transactions between petitioner and its subsidiaries. The first APA (APA I) applied for tax years 2001-05, and the second APA (APA II) applied for tax years 2006-10. In 2011 respondent determined that petitioner had not complied with the applicable terms of the governing APA revenue procedures and canceled APA I and APA II, effective January 1, 2005 and 2006, respectively.

As a result of canceling the APAs respondent determined that section 482 adjustments were necessary to reflect an arm's-length result for petitioner's intercompany transactions. On December 19, 2011, respondent issued to

petitioner a notice of deficiency determining deficiencies of $19,714,770 and $55,323,229, and penalties pursuant to section 6662(h) of $14,281,960 and $37,329,600, for tax years 2005 and 2006, respectively.

The notice made section 482 adjustments and stated that in order to properly reflect an arm's-length result for intercompany transactions, petitioner's taxable income for tax years 2005 and 2006 was increased by $102,014,000 and $266,640,000, respectively. Respondent calculated these net section 482 adjustments by relying on the report of John A. Hatch. Mr. Hatch used the comparable profits method to calculate the profits for petitioner's intercompany transactions. He concluded this method provided profits consistent with the profits earned by comparable manufacturers selling to unrelated customers.

We previously held in Eaton Corp. & Subs. v. Commissioner (Eaton I), 140 T.C. 410 (2013), that our deficiency jurisdiction includes review of the APAs' cancellation because they are administrative determinations necessary to determine the merits of the deficiency determinations. In Eaton II, at *192, we held that it was an abuse of discretion for respondent to cancel the APAs. We stated: "If we sustain respondent's determination to cancel APA I and APA II for tax years 2005 and 2006, respectively, and we hold for respondent on the section 482 adjustments, we will need to consider whether petitioner is liable for penalties

pursuant to section 6662(e) and (h)." Id. at *9. Because we concluded that it was an abuse of discretion for respondent to cancel the APAs, we did not address whether there was an abuse of discretion in respondent's reallocations of income pursuant to section 482. Our opinion included no analysis of section 482 reallocations. Accordingly, the Court did not address penalties pursuant to section 6662(h).

However, the Court's opinion discussed in detail the implementation of the APAs, including petitioner's data and computational errors and errors affecting the computation of the transfer prices under the APAs' TPM. When petitioner discovered these errors, it took actions to correct them. It submitted Forms 1120X, Amended U.S. Corporation Income Tax Return, for tax years 2005-09 (amended returns). Respondent did not accept the amended returns.

Our opinion in Eaton II analyzed these errors in the context of whether there was an abuse of discretion when respondent canceled the APAs pursuant to the revenue procedures implementing APAs, and not whether there was an abuse of discretion in making section 482 reallocations. See Rev. Proc. 96-53, sec. 11.06, 1996-2 C.B. 375, 385; Rev. Proc. 2004-40, sec. 10.06(1), 2004-2 C.B. 50, 63.[2]

---

[2]Revenue procedures provide the requirements and guidelines of the APAs. Rev. Proc. 91-22, 1991-1 C.B. 526, provided the first guidelines for APAs, and

(continued...)

We concluded that petitioner's errors in the aggregate did not merit cancellation of the APAs. Eaton II, at \*179. We further concluded that petitioner was in compliance with the terms of the APAs. Id. at \*188.

Pursuant to Rule 155 agreed computations are filed within 90 days of service of an opinion. In the absence of agreement each party shall file computations within 90 days. See Rule 155(b). We have granted numerous extensions to the parties regarding these computations because the intent of the parties was to reach agreed computations.

On March 8, 2018, the parties filed a joint status report indicating that respondent's Rule 155 calculations would include a revised calculation for penalties. Petitioner objected to the imposition of penalties, and the parties agreed to table the discussion of penalties until petitioner's revised tax liabilities were computed.

On July 6, 2018, the parties filed a joint status report in which respondent provided more detail regarding penalties and indicated that respondent's computations included 40% penalties pursuant to section 6662(h). Petitioner

[2](...continued)
these guidelines have been replaced by a succession of revenue procedures. Rev. Proc. 96-53, sec. 11.06, 1996-2 C.B. 375, 385, is effective for APA I, and Rev. Proc. 2004-40, sec. 10.06(1), 2004-2 C.B. 50, 63, is effective for APA II.

continued to object to the imposition of penalties. The parties agreed that the Court needed to address the issue of penalties in the future.

At the October 22, 2018, hearing the parties informed the Court that they had reached agreement on computations except for three issues and the Court would need to decide only one: the imposition of penalties pursuant to section 6662(h).[3] Respondent agreed with petitioner's computations, which included the adjustments included on its amended returns that respondent had not accepted previously.

Discussion

Rule 155(a) provides that, "[w]here the Court has filed * * * its opinion * * * determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations * * * showing the correct amount to be included in the decision." If the parties' computations are not in agreement, each party shall file with the Court a computation of the amount believed to be in accordance with the Court's findings and conclusions. Rule 155(b).

_____

[3]The Court concludes that the only issue we need to address is the applicability of sec. 6662(h) penalties. The parties will resolve the remaining two issues: (1) whether petitioner is entitled to foreign tax credits and net operating losses and (2) whether petitioner is entitled to make correlative adjustments pursuant to Rev. Proc. 99-32, 1999-2 C.B. 296.

"The Rule 155 computation process is not intended to be one by which a party may * * * raise for the first time issues which had not previously been addressed." Molasky v. Commissioner, 91 T.C. 683, 685 (1988), aff'd on this issue, 897 F.2d 334 (8th Cir. 1990). A new issue generally will be an issue other than a "purely mathematically generated computational item[]." Home Grp., Inc. v. Commissioner, 91 T.C. 265, 269 (1988), supplementing City Investing Co. v. Commissioner, T.C. Memo. 1987-36. If a matter "was neither placed in issue by the pleadings, addressed as an issue at trial, nor discussed by this Court in its prior opinion," that matter may not be raised in the context of a Rule 155 computation. Vento v. Commissioner, 152 T.C. 1, 8 (2019) (quoting Molasky v. Commissioner, 91 T.C. at 686).

Respondent's position is that the section 6662(h) penalties are not a new issue. The notice of deficiency determined that the cancellation of the APAs necessitated section 482 adjustments and that section 6662(h) penalties would apply as a result. Respondent contends that the 40% penalties are formulaic penalties that depend on the amounts of transfer pricing adjustments.

Petitioner's position is that the section 6662(h) penalties are a new issue under Rule 155. Petitioner contends that its corrections, which were agreed upon

as part of the Rule 155 computations, are not net section 482 adjustments and no penalties apply.

We do not need to decide whether the imposition of section 6662(h) penalties is a new issue for the purposes of Rule 155. Even if we were to assume, for purposes of argument, that this is not a new issue, we nevertheless would conclude that there were no net section 482 adjustments to support imposition of section 6662(h) penalties. To determine whether there were net section 482 adjustments, we address the applicable Code sections and regulations.

Section 6662(a) imposes a 20% penalty on an underpayment of tax attributable to any of the reasons listed in section 6662(b). These include "[a]ny substantial valuation misstatement under chapter 1". Sec. 6662(b)(3). As relevant to this case, a "substantial valuation misstatement" occurs when the net section 482 transfer price adjustment for the taxable year exceeds the lesser of $5 million or 10% of the taxpayer's gross receipts. See sec. 6662(e)(1)(B)(ii). Pursuant to section 6662(e)(3)(A) a net section 482 price adjustment means "the net increase in taxable income for the taxable year * * * resulting from adjustments under section 482 in the price for any property or services". See sec. 1.6662-6(c)(1), Income Tax Regs. (defining "net section 482 adjustment" as "the sum of all increases in the taxable income of a taxpayer for a taxable year resulting from

allocations under section 482"). When the net section 482 transfer price adjustment for the taxable year exceeds the lesser of $20 million or 20% of the taxpayer's gross receipts, section 6662(h) increases the penalty to 40 percent of the underpayment.

We need to determine whether allocations were made under section 482. The purpose of section 482 is to ensure that taxpayers clearly reflect income attributable to controlled transactions and to prevent the avoidance of taxes with respect to such transactions. Sec. 1.482-1(a)(1), Income Tax Regs. Section 1.482-1(a)(2), Income Tax Regs., authorizes the IRS to "make allocations between or among the members of a controlled group if a controlled taxpayer has not reported its true taxable income." The IRS "may allocate income, deductions, credits, allowances, basis, or any other item or element affecting taxable income (referred to as allocations)." Id. Allocations may take the form of an increase or decrease. Id.

In Eaton I, 140 T.C. at 417, we explained:

The deficiencies resulted from the cancellations that disregarded the previously agreed to transfer pricing methodology for the covered transactions. Respondent then adjusted petitioner's income under section 482 and issued a deficiency notice. Respondent could not have altered the transfer pricing methodology had the APAs at issue remained effective. * * *

Because Eaton II, at \*192, concluded that it was an abuse of discretion to cancel the APAs, the APAs remain in effect for the years in issue.

When the Commissioner has determined deficiencies pursuant to a section 482 allocation, the taxpayer bears the burden of showing that the allocations are arbitrary, capricious, or unreasonable. See Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 353 (1991) (citing G.D. Searle & Co. v. Commissioner, 88 T.C. 252, 359 (1987), and Eli Lilly & Co. v. Commissioner, 84 T.C. 996, 1131 (1985), aff'd on this issue, rev'd in part, and remanded, 856 F.2d 855 (7th Cir. 1988)). If we hold that the adjustments set forth in the notice of deficiency are arbitrary, capricious, or unreasonable, then the taxpayer must next show that the allocations it proposes satisfy the arm's-length standard. Eli Lilly & Co. v. Commissioner, 856 F.2d at 860 (and the cases cited thereat).

In this case we did not address whether there was an abuse of discretion regarding a section 482 allocation. We never reached that step. Rather, we addressed whether it was an abuse of discretion for respondent to cancel the APAs. See Eaton II, at \*9. Because Eaton II concluded that the cancellation of the APAs was an abuse of discretion, the APAs remained in effect. There was no allocation of income and deductions by the Secretary pursuant to section 482 and no "net increase in taxable income for the taxable year * * * resulting from

adjustments under section 482 in the price for any property or services". <u>See</u> sec. 6662(e)(3)(A). Therefore, there was no net section 482 transfer price adjustment.

Accordingly, petitioner is not liable for section 6662(h) penalties for the years in issue.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.